## East Hempfield Township *v.* Lancaster et al., Appellants.

Argued April 30, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*D. A. Franklin*, with him *Bernard M. Zimmerman*, City Solicitor, *Charles Foltz Herr*, *C. W. B. Townsend, Jr.*, and *Appel, Ranch, Herr & Appel*, and *Townsend, Elliott & Munson*, for appellants.

*John I. Hartman, Jr.*, with him *Windolph, Burkholder & Hartman*, for appellees.

OPINION BY MR. JUSTICE ROBERTS, January 25, 1971:

The sole issue presented here is whether the Court of Common Pleas of Lancaster County had jurisdiction to determine the reasonableness of certain water rates fixed by the City of Lancaster, for users outside the City, or whether exclusive jurisdiction for such a determination rested with the Pennsylvania Public Utility Commission. We reverse the order of the Superior Court holding that the court of common pleas could hear this case.

The plaintiffs in the trial court were five Second Class Townships (East Hempfield, East Lampeter, Lancaster, Manor, and West Lampeter), one First Class Township (Manheim), a borough (Millersville), and a school district (Manheim)—all of which were located in Lancaster County—as well as a Pennsylvania corporation (Clabell Company), a New Jersey corporation (North Cedar Corporation), and two individuals (Alan Sagner and Frank G. Drout). They collectively[1] instituted an action in the Court of Common Pleas[2] of Lancaster County against the City of Lancaster (hereinafter the City) and the City of Lancaster Authority (hereinafter the Authority), seeking to invalidate certain water rates fixed by the City for the consumption of water outside the City's corporate limits as being in excess of the rates charged inside the City's corporate limits.

---

[1] In the court of common pleas the question was raised whether the townships, the borough, and the school district had standing. The court held that in the posture of the case then before it, all the parties had the capacity to sue. That issue is not now before us.

[2] The question also was raised whether this action was in equity or at law, and the court determined that it was an action of law. That issue is likewise not before us. Cf. *Calabrese v. Collier Township Municipal Authority*, 430 Pa. 289, 240 A. 2d 544 (1968). See also discussion, infra 412, as to how *Calabrese* is distinguished from the instant case.

The Authority was created by the City under the provisions of the Municipality Authorities Act of May 2, 1945, P. L. 382, 53 P.S. §301. In 1955 the City conveyed to the Authority all the assets of its water system whether within or outside the City. In the same year the Authority "leased back" the water system to the City for a term of forty years.

Under the provisions of the lease, the City agreed to keep in full force an ordinance imposing water rentals and charges on users of the water system. The City further agreed that the total of the rentals would be sufficient, together with other funds available for such purpose, to provide for the payment of (1) the annual expenses for the operation, maintenance, etc., of the water system, (2) the annual lease rental payments, and (3) an amount sufficient to provide a margin of safety of at least 5% of the annual rental payable under the lease. In addition the City agreed to enforce the collection of the water rentals and charges, and in the event they were not paid, to take all necessary steps to reduce the charges to liens and to enforce the collection of such liens.

The ordinance imposing the challenged rates was adopted by the City on April 9, 1968. Appellees contend that the water rates established under the ordinance for consumers outside the City were 157% in excess of the water rates for the supply of the same quantity of water to consumers within the City, and therefore the outside-city rates were invalid, illegal, unreasonable and discriminatory.

The City and the Authority filed preliminary objections to the complaint, raising, inter alia, the issue of jurisdiction. The court of common pleas held that it could hear the case, and that the Public Utility Commission did not have exclusive jurisdiction over the matter. The Superior Court affirmed in a memoran-

dum opinion, with Judge HOFFMAN noting a dissent. *East Hempfield Township v. Lancaster,* 216 Pa. Superior Ct. 733, 258 A. 2d 122 (1969).

The record clearly demonstrates that the Authority was a "financing device", and that it was the City which, in reality, determined, fixed, and charged the rates. Although on paper the Authority leased back the water system to the City, and was thus in a position to have the City acting as its agent, the facts reveal that the Authority exercised *no control* over the City's operation of the water system. In fact the City operated the water system after the creation of the Authority precisely as it did before the implementation of the "sale and lease-back" financing technique. The lease required only that minimum water rates be charged so that the Authority could meet its cost of financing expenses. The City fixed the maximum, had the rents set aside in a Water Reserve Fund, kept the records, carried the insurance, and was generally responsible for the operation and maintenance of the water system.

In light of these facts, the statutory jurisdictional scheme is clear. Section 301 of the Public Utility Law, Acts of May 28, 1937, P.L. 1053, art. III, §301, and March 21, 1939, P. L. 10, §2, 66 P.S. §1141, states that: ". . . public utility service being furnished or rendered by a municipal corporation, or by the operating agencies of any municipal corporation, beyond its corporate limits, shall be subject to regulation and control by the commission [Public Utility Commission] as to rates, with the same force, and in like manner, as if such service were rendered by a public utility." Since the City in fact provided the water service in question, just as it did prior to the creation of the Authority, Section 301 controls this jurisdictional dispute.

Further, Section 3531 of The Third Class City Code, Act of June 23, 1931, P. L. 932, art. XXXV, §3531, as

amended, Act of June 28, 1951, P. L. 662, §35.2, 53 P.S. §38531, provides: "The service of water by any such City in the territory outside the limits of the city shall be subject to regulation and control by the Public Utility Commission as to character of service, extensions, and rates. . . ."

It is undisputed that on the record before us the City is operating the water system on its own behalf. Therefore, under these statutes the Public Utility Commission, and not the court of common pleas, is the proper forum for hearing any challenges to the reasonableness of the rates for service outside the City actually fixed by the City in this case.

Appellees assert that Section 4B(h) of the Municipality Authorities Act vests the common pleas courts with exclusive jurisdiction in this situation. Section 4B(h) provides that the Authority may ". . . fix, alter, charge, and collect rates" and the ". . . court of common pleas shall have exclusive jurisdiction to determine all such questions." In this case, the Authority neither "fixed," "altered," "charged," nor "collected" the rates in question, and thus, without the Authority actually operating the system on its own behalf or having it done by the City as its agent, Section 4B(h) is inapplicable.

Appellees also urge that Section 4B(h) requires that the Authority fix all rates, and its delegation of rate-making power to the City is unlawful. However, subsection (h) is qualified by the opening paragraph of Section 4B, which provides: "Every Authority is hereby granted, and shall have and *may* exercise all powers necessary or convenient for the carrying out of the aforesaid purposes, including but without limiting the generality of the foregoing, the following rights and powers:" (emphasis added).

Clearly this language permits the Authority to exercise the enumerated powers, but does not require that it do so.

Finally, appellees rely on the case of *Calabrese v. Collier Township Municipal Authority*, 430 Pa. 289, 240 A. 2d 544 (1968), to support their position. Yet *Calabrese* is distinguishable. There, the *authority actually established* the disputed rates. No "lease-back" agreement such as exists in the instant dispute was present.

Accordingly, the order of the Superior Court is reversed, and the complaint is dismissed.

Mr. Justice COHEN took no part in the decision of this case.

CONCURRING OPINION BY MR. CHIEF JUSTICE BELL:

I join in the Majority Opinion, but feel compelled to add the following:

The legislation in the field of determining and fixing rates, and the jurisdiction of the issues arising thereunder, are so muddled and confusing that they should be quickly clarified by the Legislature. The City of Lancaster and its created Authority, by their conveyance, lease-back arrangements and devices which are an obvious subterfuge, have unintentionally but successfully added to the confusion in this field.

DISSENTING OPINION BY MR. JUSTICE JONES:

A determination of the instant appeal must begin with the conceded facts that the Authority, instead of fixing the water rates, delegated its responsibility to do so to the City and that it was the City which fixed the amount and schedule of the water rates. Although created by the City, the Authority is not an agent of the City but rather an independent agency of the Commonwealth (*Simon Appeal*, 408 Pa. 464, 468, 184 A. 2d 695 (1962)) and its powers and duties are delineated, defined and limited in the legislation under the provi-

sions of which it was created; from such legislation it derives its sole power and authority to act.

Certain historical background is pertinent. Under the Public Utility Code (Acts of May 28, 1937, P. L. 1053, art. III, §301, and March 21, 1939, P. L. 10, §2, 66 P.S. §1141), it is provided: "Every rate made, demanded, or received by any public utility, or by any two or more public utilities jointly, shall be just and reasonable, and in conformity with regulations or orders of the commission. Provided, That only public utility service being furnished or rendered by a municipal corporation,[1] or by the operating agencies of any municipal corporation, beyond its corporate limits, shall be subject to regulation and control by the commission [Public Utility Commission] as to rates, with the same force, and in like manner, as if such service were rendered by a public utility." Prior to the enactment of this legislation, this Court, in *Shirk v. Lancaster City,* 313 Pa. 158, 169 A. 557 (1933), assumed jurisdiction to act and pass upon the reasonableness of water rates for consumers outside the city limits and established guide lines for the ascertainment of the reasonableness of such rates.

In 1939, the Superior Court in *Ambridge Borough v. Pa. Public Utility Commission,* 137 Pa. Superior Ct. 50, 53, 8 A. 2d 429 (1939), noted: "The Public Service Company Act of 1913, P. L. 1374, gave the Public Service Commission no power of supervision or regulation over the rates charged by a municipal corporation which furnished water or other public service to its inhabitants or to customers residing outside its limits. But the Public Utility Law of May 28, 1937, P. L. 1053, in section 301, 66 P.S. Supp. sec. 1141, provides: 'That any public utility service being furnished or rendered

---

[1] A "municipal corporation" includes an "authority": Act of 1939, *supra,* §2(15).

by a municipal corporation beyond its corporate limits, shall be subject to regulation and control by the commission as to rates, with the same force, and in like manner, as if such service [that is, the service beyond its corporate limits] were rendered by a public utility.' " In *Ambridge,* the appeal was from an order of the Public Utility Commission which held that a municipal corporation could be required by the Commission to treat its customers outside the corporate limits as if the whole plant were that of a private water company and that consumers outside the corporate limits of the municipality could not be segregated for rate-making purposes. In reversing the Commission, the Court held that a municipal corporation could establish water rates for consumers outside its corporate limits which differed from water rates for consumers within its corporate limits, provided it did not give undue or unreasonable preference to or create unfair discrimination to the inside-municipality class of consumers. It is of interest to note in *Ambridge* that the Court recognized that a court of common pleas sitting in equity had the competence to entertain an action brought by consumers within the corporate limits of the municipality to enjoin the collection or imposition of rates which would require them to contribute ·to losses incurred in furnishing water outside the corporate limits of the municipality. 137 Pa. Superior Ct. at 60.

In *State College Borough Authority v. Pa. P. U. C.,* 152 Pa. Superior Ct. 363, 31 A. 2d 557 (1943) (appeal from an order of the Public Utility Commission), the Court held, *inter alia,* that the Public Utility Commission under the section 301 of the Public Utility Law, *supra,* had regulatory jurisdiction not only over rates of municipal corporations but also over the rates of an authority created by such municipal corporation

charged for water to consumers outside the corporate boundaries of the municipal corporation.

In 1945, the legislature passed the Municipality Authorities Act of 1945.[2] Under that Act, and the amendments thereto, section 4B (53 P.S. §306) grants to every authority certain rights and powers, one of which (section 4B(h)) is to "fix, alter, charge and collect rates and other charges in the area served by its facilities at reasonable and uniform rates to be determined exclusively by it." The same section further provides that: "Any person questioning the reasonableness or uniformity of any rate fixed by any Authority . . . may bring suit against the Authority in the court of common pleas of the county wherein the project is located, or if the project is located in more than one county then in the court of common pleas of the county wherein the principal office of the project is located. *The court of common pleas shall have exclusive jurisdiction to determine all such questions involving rates or services.*" (Emphasis supplied)

The impact of the passage of this Act upon the existing case law and the Public Utility Law, *supra,* was recognized in *Rankin v. Chester Municipal Authority,* 165 Pa. Superior Ct. 438, 443-44, 68 A. 2d 458 (1949): "Prior to the enactment of the Public Utility Law, supra, it was held that while jurisdiction over water rates charged by a municipality, within its corporate limits, was vested in the court of common pleas, the 'Public Service Commission' was the tribunal vested with jurisdiction over rates charged beyond the munici-

---

[2] Act of May 2, 1945, P. L. 382, §1 *et seq.,* 53 P.S. §301 *et seq.,* later amended by the Acts of June 12, 1947, P. L. 571, §1; September 26, 1951, P. L. 1507, §1; January 21, 1952, P. L. (1951) 2188, §§4, 5; August 24, 1953, P. L. 1338, §1; July 27, 1955, P. L. 282, §1; October 7, 1955, P. L. 671, §1; May 31, 1957, P. L. 211, §1; November 30, 1959, P. L. 1596, §1; May 15, 1963, P. L. 33, §1.

pal boundaries. Shirk v. Lancaster City, 313 Pa. 158, 166, 169 A. 557. Subsequent to the enactment of the Public Utility Law and the amendment of §301 thereof, supra, this Court held in State College Borough Authority v. Pennsylvania Public Utility Commission, 152 Pa. Superior Ct. 363, 31 A. 2d 557, that the Public Utility Commission was vested with jurisdiction regarding a controversy involving reasonableness of rates charged by a municipal authority to consumers residing outside the municipality which created the authority. Cf. Ambridge Borough v. Pennsylvania Public Utility Commission, 137 Pa. Superior Ct. 50, 8 A. 2d 429. Subsequent thereto, the legislature enacted the Municipality Authorities Act of 1945 (Act of May 2, 1945, P. L. 382 et seq. 53 P.S. §2900z-1 et seq.) to negative the effect of State College Borough v. Pennsylvania Public Utility Commission, supra. Section 4 of this Act, 53 PS §2900z-5(h), provides: '. . . The court of common pleas shall have exclusive jurisdiction to determine the reasonableness and uniformity of rates and other charges fixed, altered, charged or collected by an Authority.' It is true that the legislature has not by specific amendment of the Public Utility Law either removed municipal authorities from the definition of 'municipal corporation' as contained in the Public Utility Law (Section 2[15] Act of 1937, P. L. 1053, Art. I, §2, 66 PS §1102[15]) or delimited the scope of its jurisdiction and power (Section 301 of the Public Utility Law, supra, 66 PS §1141). It is apparent, however, that §4B(h) of the Municipality Authorities Act of 1945, supra, is wholly inconsistent with the above mentioned sections of the Public Utility Law." The Court concluded and, I believe properly, that the Municipality Authorities Act imposed a definite limitation upon section 301 of the Public Utilities Code and that courts of common pleas had *exclusive* jurisdiction to

inquire into the reasonableness of rates charged by any Authority beyond as well as within the corporate limits of the municipality which created it. *See Yezioro v. North Fayette Municipal Authority,* 193 Pa. Superior Ct. 271, 164 A. 2d 129 (1960).[3] *See, also Highland S. & W. Authority v. Engelbach,* 208 Pa. Superior Ct. 1, 220 A. 2d 390 (1966).

The Municipality Authorities Act of 1945, Act of May 2, 1945, P. L. 382, §4, as amended, 53 P.S. §306A, further provides as follows: "A. Every Authority incorporated under this act shall be a body corporate and politic, and shall be for the purpose of acquiring, holding, constructing, improving, maintaining and operating, owning, leasing, *either in the capacity of lessor or lessee,* projects of the following kind and character . . . waterworks, water supply works, water distribution systems. . . ." (Emphasis supplied)

It is clear beyond question that, under the provisions of the Municipality Authorities Act, the powers and duties, including those involved in water rate making, are imposed upon an Authority, regardless of whether the Authority, in furtherance of its corporate purpose, acts in the capacity of lessor or lessee. The argument of the City and Authority, accepted by the majority, that by virtue of the "lease back" arrangement between them, the City, and not the Authority, has the rate fixing power, that, therefore, section 4B(h) of the Municipality Authorities Act is inapplicable under the circumstances and that the exclusive jurisdiction to determine the reasonableness of water rates was in the

---

[3] *Yezioro* was an action in equity. See *Calabrese v. Collier Township Municipal Authority,* 430 Pa. 289, 240 A. 2d 544 (1968), wherein we held that, under the Municipality Authorities Act of 1945, §4B(h), as amended, only a court of common pleas in the common law sense and not in the chancery or equitable sense was the proper tribunal to determine questions involving rates for services fixed by an authority.

Public Utility Commission and not in the courts disregards the clear and unambiguous language of the statute.

While, perhaps, it is unfortunate that the legislature has seen fit to make the jurisdiction of the tribunal to pass upon the reasonableness of rates for services dependent on the character of the corporate body which fixes such rates or services, it is not within our province to defeat and nullify the clearly expressed legislative mandate. Until changed by legislative action, the Public Utility Commission will continue as the tribunal with exclusive jurisdiction to pass upon the reasonableness of water rates fixed by a municipal corporation for consumers outside its corporate boundaries and courts of common pleas have exclusive jurisdiction to pass upon the reasonableness of water rates fixed by an Authority, whether the latter acts in the capacity of a lessor or lessee of the water system.

True it is that the Authority, through the medium of the "lease back" arrangement, sought to pass on to the City, and the latter willingly accepted, the power to fix the water rates and did, in fact, fix the water rates herein questioned. However, the question arises whether the Authority had the right to delegate its power to fix rates to the City. It is precisely at this point that I part company with the majority.

It was the legislative intent that an Authority be neither a nonentity nor a device simply to enable a municipality to avoid statutory debt limitation but rather an active and operating body, whether in the capacity of lessor or lessee, within the purport and purposes of the Municipality Authorities Act. While the Authority *may* choose not to exercise its rate fixing responsibilities, it does not follow that such responsibility may be delegated to any other entity, governmental or otherwise.

My examination of the instant "lease back" arrangement indicates that the Authority has surrendered its rate fixing power and that such surrender is in violation of that portion of section 4B(h) which provides for *"uniform rates to be determined exclusively by it* [the Authority]." The court below well stated: "Rates, it could be argued, could be determined in either of two ways. First, limits could be set within which rates charged would have to fall, or secondly, the specific rate could be fixed. The lease (copy of which is attached to the preliminary objections) which delegates certain matters from Authority to Lancaster in Section 3 covering water rentals and charges, sets forth the lower limit of rates as follows: '. . . the total of such rentals and charges . . . shall be at least such that the amounts . . . will be sufficient . . . to provide funds for the payment of . . . (a) the annual expenses for the operation, maintenance . . . repair . . . and (c) to provide a margin of safety of at least 5% of (b) (annual rental).' It will be noticed immediately that Authority set the lower limit but said nothing about an upper limit. Authority obviously has retained no control over maximum rates and therefore has surrendered all control over increased charges. Under these circumstances it is impossible to say that Authority has 'determined' or 'fixed' the rates as required by the Act. Yezioro v. North Fayette County Municipal Authority, Appellant, 193 Pa. Superior Ct. 271 (1960).

"Under the second theory of determining rates this would mean that Authority itself should set the rate. The Act does not prohibit Lancaster from adopting an ordinance setting forth the rates but it is a statutory mandate that the rates set forth in the ordinance must first be set by Authority. This has not been done. It would be perfectly possible for Lancaster to supply its operating expenses to Authority so that Authority

could determine proper rates. It is of no avail to say that Authority might not set proper rates because Lancaster itself as a user or consumer could bring an action against Authority similar to the one before the court at the present time."

As noted by the majority, as well as the court below, the "lease back" arrangement provides only for a minimum amount of water rates to be charged but it makes no provisions whatsoever for maximum water rates to be charged and the Authority has completely surrendered its right to fix or control the maximum amount of the water rates to be charged. In my view, the Authority lacked the power to delegate to the City its legislatively mandated power to fix the water rates. *Cf. Forsht v. City of Altoona and Altoona City Authority* (Blair County Court of Common Pleas) (unreported).

My conclusion is that the legislature has vested in the Authority the full and exclusive power to fix water rates to be charged consumers of water and that the Authority had no right to delegate, under the so-called "lease back" arrangement, its power and duty to fix such rates. The fact that the City, rather than the Authority, took upon itself the fixing of such rates does not divest a court of common pleas of its jurisdiction over the actions of the Authority. The court below properly concluded that jurisdiction to pass upon the reasonableness of the rates, under the circumstances, lay in the court of common pleas and not in the Public Utility Commission.[4]

---

[4] In *Breston v. City of Bradford* (Complaint Docket No. 17892, Investigation Docket No. 72, Petition No. 3, Application Docket No. 90842 (1964)), wherein a complaint was filed with the Commission by water consumers outside the corporate limits of Bradford City concerning a purported increase in water rates, it appeared that the water system was owned by Bradford City Water Authority but operated by Bradford City. The Commission sustained the

For these reasons I dissent and would affirm the order of the Superior Court.

City's motion in dismissing the complaint for lack of jurisdiction, stating: "We have even considered the propriety of attempting to regulate an 'operating lessee', so-called, as the City of Bradford might be termed in the proceeding here pending. But *such attempt would* either violate the basic requirements of the Trust Indenture or would *be a useless and expensive duplication of the processes which the [common pleas] court must utilize in making certain determinations* and for which the consumer must pay." (Emphasis supplied)