447 A.2d 245

**ELIZABETH TOWNSHIP and Elizabeth Township Sanitary Authority, Appellants,**

v.

**MUNICIPAL AUTHORITY OF the CITY OF McKEESPORT.**

**TOWNSHIP OF NORTH VERSAILLES, Appellant,**

v.

**MUNICIPAL AUTHORITY OF the CITY OF McKEESPORT.**

Supreme Court of Pennsylvania.

Argued March 2, 1982.

Decided July 6, 1982.

John A. Caputo, O'Donnell, Bresnahan & Caputo, Pittsburgh, for appellants at No. 23.

G. N. Evashavik, Evashavik, Capone, Evans, DellaVecchia, Pittsburgh, for appellant at No. 24.

John J. Meyers, Liddle & Adams, McKeesport, Gary H. McQuone, Pittsburgh, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

At issue is whether there is a right to a trial by jury in an action brought in a court of common pleas to challenge the reasonableness of rates established by a municipal authority. On appeals from judgments of the Court of Common Pleas of Allegheny County entered on a jury's verdict declaring the sewage rates of appellee Municipal Authority of the City of McKeesport to be unreasonable, the Commonwealth Court held that it was error to have submitted the case to a jury. We agree with the Commonwealth Court that a challenge to the rates set by a municipal authority is to be decided exclusively by a judge of the court of common pleas. Hence we affirm the order of the Commonwealth Court, 57 Pa.Cmwlth. 13, 426 A.2d 182, vacating the judgments and remanding for nonjury proceedings.[1]

## I

Appellee Municipal Authority was formed by the City of McKeesport pursuant to the Municipal Authorities Act of 1945, Act of May 2, 1945, P.L. 382, § 1 et seq., as amended, 53 P.S. § 301 et seq. (1974 and Supp. 1982), to facilitate the disposal and treatment of sewage originating in the basin area of the Monongahela River. By written agreement executed in 1960, appellee has provided sewage treatment

---

1. This case was reassigned to this writer on May 20, 1982.

services to appellants Elizabeth Township and the Township of North Versailles, two of several municipalities in the area.

The agreement between appellee and appellant townships directs that appellee's schedule of sewage service charges shall be uniform as to reasonable classes of services, shall fix reasonable minimum charges, and shall be calculated to yield the amount required for adequate bond reserves and payment of expenses relating to the sewage system. The agreement further provides that the schedule of charges "shall be adjusted from time to time in such manner as the Authority shall deem necessary or proper to insure the collection of adequate revenues to meet its financial requirements." This provision of the agreement reflects appellee's statutorily conferred right and power "[t]o fix, alter, charge and collect rates and other charges in the area served by its facilities at reasonable and uniform rates to be determined exclusively by it . . . ." Act of 1945, § 4 B(h), 53 P.S. § 306 B(h).[2]

In the present suits, filed in 1977, appellants charged that, in light of recent state and federal grants to appellee, rate increases adopted by appellee in March of 1976 would im-

2. The agreement states:

"The Authority's schedule of sewage service charges shall be uniform as to reasonable classes of services throughout the entire service area of the Sewage Disposal System, and shall be so calculated as to yield in the aggregate the amount required for paying all current administrative and operating expenses of the Authority, the interest on, and the principal of, all outstanding bonds as the same become due and payable, any and all other expenses and obligations of the Authority arising out of or incident to the construction, operation and maintenance of the Sewage Disposal System, and to create such reserves for such purposes as may be required by the resolution authorizing the issuance of its bonds or in the trust indenture securing the same.

The Authority's schedule of sewage service charges shall fix reasonable minimum charges, may include such block rates for metered water users and such coverage for flat rate users as the Authority shall determine, and shall provide extra charges for commercial and industrial wastes which impose an extraordinary burden on the Sewage Disposal System. The schedule shall be adjusted from time to time in such manner as the Authority shall deem necessary or proper to insure the collection of adequate revenues to meet its financial requirements."

properly generate excessive reserve funds that would permit appellee to retire bond indebtedness prematurely. Appellants Elizabeth Township and Elizabeth Township Sanitary Authority filed two suits, one seeking damages in assumpsit and the other seeking declaratory relief. The assumpsit action sought damages in excess of $10,000, allegedly the difference between the challenged rates and a "fair and reasonable rate." The declaratory judgment action sought a modification of the challenged rate schedule as well as a refund of monies paid pursuant to the challenged rates. The suit of appellant Township of North Versailles, although captioned a complaint in assumpsit, sought relief identical to that sought by Elizabeth Township in its declaratory judgment action. A jury trial was demanded in all three suits.

The suits were consolidated for trial by jury, over appellee's objection to a jury trial. After two full days of expert testimony, the question of the reasonableness of appellee's rate increase was submitted to the jury. The jury, who at the outset had been told by the court that it was "sitting, in effect, as a public utility commission," deliberated for less than one-half hour before returning a verdict declaring the March 1976 rate increase to be unreasonable. The jury did not consider what a "fair and reasonable rate" would have been or any other issues in the suits.

## II

Suits challenging the reasonableness of rates set by a municipal authority are authorized by section 4 B(h) of the Municipal Authorities Act of 1945, 53 P.S. § 306 B(h), which provides:

"Any person questioning the reasonableness or uniformity of any rate fixed by any Authority or the adequacy, safety and reasonableness of the Authority's services, including extensions thereof, may bring suit against the Authority in the court of common pleas of the county wherein the principal office of the project is located. The court of common pleas shall have exclusive jurisdiction to determine all such questions involving rates or service."

Neither this nor any other provision of the Act states whether the proceedings authorized in the courts of common pleas may be tried before a jury. However, there is no doubt that a jury trial is not available to a party seeking review of ratemaking discretion before an administrative tribunal. Cf. *Tax Review Board v. Weiner*, 398 Pa. 381, 157 A.2d 879 (1960) (no jury trial pursuant to Pa.Const. art. I, § 6 in proceedings before Tax Review Board on customer's challenge to adequacy of city water services). A review of the decisional and statutory law preceding the enactment of the Municipal Authorities Act of 1945, particularly the law relating to municipal corporations which had not formed municipal authorities, demonstrates that the proceedings authorized by section 4 B(h) of the Act of 1945 are to be conducted in the same manner as rate challenges brought before this Commonwealth's principal rate-reviewing administrative tribunal, the Public Utility Commission.

Prior to the enactment of the Act of 1945, a municipal corporation which had not formed an authority to provide utility services was subject to rate challenges in one of two forums. If the rate challenge arose out of services provided by the corporation within its corporate boundaries, the challenge was to be brought in the courts of common pleas. See, e.g., *Barnes Laundry Co. v. City of Pittsburgh*, 266 Pa. 24, 109 A. 535 (1920). If the challenge arose out of services provided outside the corporate boundaries, the challenge was to be brought before the P.U.C., in the same manner as rate challenges brought against public utilities. See, e.g., Act of March 21, 1939, P.L. 10, § 2, amending Public Utility Law, Act of May 28, 1937, P.L. 1053, § 301, formerly 66 P.S. § 1141, presently 66 Pa.C.S. § 1301.

The predecessor to the Act of 1945, the Municipality Authorities Act of 1935, Act of June 28, 1935, P.L. 463, § 1 et seq., contained neither an express provision authorizing challenges to rates set by a municipal authority nor a provision allocating jurisdiction over such disputes between the courts of common pleas and the P.U.C. In construing the Act of 1935 in the context of a challenge to the rates of

a municipal authority as applied outside the boundaries of the municipal corporation creating the authority, the Superior Court relied upon statutory and decisional law relating to municipal corporations to hold that these challenges are within the jurisdiction of the P.U.C. *State College Borough Authority v. P.U.C.*, 152 Pa.Super. 363, 31 A.2d 557 (1943).

■ When viewed against this background, it is clear that the provision of section 4 B(h) of the Act of 1945 which states that the courts of common pleas shall have "exclusive jurisdiction" over all challenges to the rates set by a municipal authority was intended to reject the holding of *State College* that had permitted challenges to the rates of municipal authorities to be heard by the P.U.C. However, nothing in this reallocation of jurisdiction over rate challenges from the P.U.C. to the courts of common pleas was designed to alter the manner in which the rate challenge is to be conducted. That portion of section 4 B(h) specifically authorizing rate proceedings merely confirmed the power of the courts of common pleas to scrutinize ratemaking discretion in the same fashion as the P.U.C.

Because it is the court of common pleas, and not the jury, which, in the words of the trial court, "sits, in effect, as a public utility commission," the matter was properly remanded to the court of common pleas for nonjury proceedings.

Order of the Commonwealth Court affirmed.

LARSEN, J., files a dissenting opinion in which FLAHERTY, J., joins.

LARSEN, Justice, dissenting.

I dissent. The sole issue in this sewage rate dispute is whether the trial court erred in submitting the case to a jury. The Townships have the right to a jury trial in this case, based on Article 1, Section 6 of the Pennsylvania Constitution, which provides: "Trial by jury shall remain as heretofore, and the right thereof remain inviolate." In *William Goldman Theaters, Inc. v. Dana*, 405 Pa. 83, 93, 173 A.2d 59, 64 (1961), *cert. denied*, 386 U.S. 897, 82 S.Ct. 174, 7

L.Ed.2d 93 (1961), this Court construed Article I, Section 6 to mandate a jury trial "in every situation in which [an individual] would have been entitled to such a trial at the time of the adoption of our State Constitution of 1790. . .". In this case, the relationship between the parties is based on a written contract. This contract contains a clause which provides that the sewage rates charged by the Authority will be sufficient to meet the Authority's operating expenses and to amortize the Authority's debts.[1] The essence of this clause is that the sewage rates will be uniform and reasonable. This case is nothing more than a dispute regarding an ordinary contract term. Jury trials were undoubtedly available for contract disputes in 1790. *See Emerick v. Harris*, 1 Binn. 416 (Pa.1808). Consequently, a jury trial was properly granted in this case.

The Commonwealth Court erred when it concluded that no right to trial by jury regarding these sewage rates could have existed in 1790, since municipal authorities did not exist before 1935. Obviously municipal authorities and sewage rates did not exist in 1790, but that is not the real issue. Even though movie theaters and pornographic films did not exist in 1790, in the *Goldman* case this Court concluded that

1. The contract clause is as follows:
   The Authority's schedule of sewage service charges shall be uniform as to reasonable classes of services throughout the entire service area of the Sewage Disposal System, and shall be so calculated as to yield in the aggregate the amount required for paying all current administrative and operating expenses of the Authority, the interest on, and the principal of, all outstanding bonds as the same become due and payable, any and all other expenses and obligations of the Authority arising out of or incident to the construction, operation and maintenance of the Sewage Disposal System, and to create such reserves for such purposes as may be required by the resolution authorizing the issuance of its bonds or in the trust indenture securing the same.
   The Authority's schedule of sewage service charges shall fix reasonable minimum charges, may include such block rates for metered water users and such coverage for flat rate users as the Authority shall determine, and shall provide extra charges for commercial and industrial wastes which impose an extraordinary burden on the Sewage Disposal System. The schedule shall be adjusted from time to time in such manner as the Authority shall deem necessary or proper to insure the collection of adequate revenues to meet its financial requirements.

movie theaters charged with exhibiting pornographic films had a right to a jury trial because in 1790 "utterance of obscene matter" was triable to a jury. Likewise, the Townships are entitled to a jury trial because contract disputes were triable to a jury in 1790. Technology may have advanced, but the underlying legal categories are the same.

The Commonwealth Court also determined that judicial review of the reasonableness of sewage rates is a proceeding created by the Municipal Authorities Act, and that jury trials are not available in proceedings created by statute unless the statute so provides, or unless the proceeding has a common law basis. *See Appeal of Watson*, 377 Pa. 495, 105 A.2d 576 (1954), *cert. denied*, 348 U.S. 879, 75 S.Ct. 120, 99 L.Ed. 692 (1954), *reh'g denied*, 348 U.S. 922, 75 S.Ct. 301, 99 S.Ct. 723 (1955) (no jury trial in disputes involving statutory teacher tenure); *W. J. Dillner Transfer Co. v. Pennsylvania Public Utility Commission*, 191 Pa.Super. 136, 155 A.2d 429 (1959), *allocatur refused* (no jury trial for violation of Public Utility Law); *Commonwealth Department of Environmental Resources v. Wheeling-Pittsburgh Steel Corp.*, 22 Pa. Cmwlth. 280, 348 A.2d 765 (1975) (no jury trial in air pollution regulation).[2] Those cases are distinguishable from the present case because, unlike teacher tenure, public utility law, or air pollution control, etc., this lawsuit has a common law, contractual basis.[3] The rate provision, which

2. Other cases which support this proposition are: *Smith Case*, 381 Pa. 223, 112 A.2d 625 (1955) (no jury trial in statutory arbitration); *Commonwealth v. Bechtel*, 384 Pa. 184, 120 A.2d 295 (1956) (no jury trial under Mental Health Act); *In re Tahiti Bar, Inc.*, 186 Pa.Super. 214, 142 A.2d 491 (1958), *aff'd*, 395 Pa. 355, 150 A.2d 112 (1959) (no jury trial in liquor license revocation); *Tax Review Board v. Weiner*, 398 Pa. 381, 157 A.2d 879 (1960) (no jury trial before Tax Review Board); *Commonwealth v. Johnson*, 211 Pa.Super. 62, 234 A.2d 9 (1967) (no jury trial in juvenile court); *Commonwealth v. Marco Electric Manufacturing Corp.*, 32 Pa.Commw. 360, 379 A.2d 342 (1977) (no jury trial in tax appeal).

3. In *Calabrese v. Collier Township Municipal Authority*, 430 Pa. 289, 240 A.2d 544 (1968) this Court held that Section 4B(h) of the Municipal Authorities Act provides the exclusive remedy for testing the reasonableness of rates set by Municipal Authorities—an action at law, and not in equity, in the court of common pleas. *See*

was explicitly included in the contract by the parties, would be subject to judicial review at common law as an ordinary contract term. Since the lawsuit has a common law basis, it is irrelevant that the Municipal Authorities Act fails to specifically provide for jury trials.

The Commonwealth Court misinterpreted the Act when it concluded that the legislature intended that sewage rate cases be tried non-jury because they involve "intricate questions of law, of the interpretation of contracts, of economics, of engineering and of municipal management...". No reference to pertinent legislative history is provided, and the words of the Act certainly do not support this conclusion. An interpretation of a statute which operates to deprive an individual of a jury trial is not favored. *See Commonwealth v. Dillworth*, 431 Pa. 479, 246 A.2d 859 (1968); *Gordon v. Biesinger*, 335 Pa. 1, 6 A.2d 425 (1939). In fact, the words of the Act support the opposite conclusion. The Act expressly designates the court of common pleas as the forum for sewage rate cases involving municipal authorities.[4] Jury trials have traditionally been available in actions at law in the court of common pleas, and designating the court of common pleas as the tribunal inherently includes the concept of a jury trial unless specifically excluded. Finally, the Commonwealth Court's conclusion is completely inconsistent with the strong public policy which favors jury trials. *See Commonwealth v. Baxter*, 282 Pa.Super. 467, 422 A.2d 1388 (1980). This Court has characterized trial by jury as the "jewel of Anglo-Saxon jurisprudence". *Commonwealth v. Fugmann*, 330 Pa. 4, 29, 198 A. 99, 111 (1938).

*Tornetta v. Plymouth Township Municipal Authority*, 31 Pa.Commw. 353, 375 A.2d 1381 (1977). The holding in *Calabrese* is perfectly consistent with the conclusion that the present lawsuit has a common law, contractual basis.

4. By contrast, the Public Utility Commission is the forum for certain other rate disputes. *See East Hempfield Township v. City of Lancaster*, 441 Pa. 406, 273 A.2d 333 (1971); *Yezioro v. North Fayette County Municipal Authority*, 193 Pa.Super. 271, 164 A.2d 129 (1960) (dissenting opinion); *Shirk v. Lancaster County*, 313 Pa. 158, 169 A. 557 (1933).

For the foregoing reasons, I would reverse the order of the Commonwealth Court and reinstate the order of the trial court.

FLAHERTY, J., joins this dissenting opinion.