# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Conyngham Township, : 
        Petitioner : 
         : 
        v. : 
         : 
Pennsylvania Public Utility : 
Commission, :   No. 113 C.D. 2024
        Respondent :   Argued: September 9, 2024


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE ANNE E. COVEY, Judge


OPINION BY
JUDGE COVEY                        FILED: October 4, 2024


Conyngham Township (Township) petitions this Court for review of the Pennsylvania Public Utility Commission's (Commission) November 1, 2023 order granting the Exceptions of the Sanitary Sewer Authority of the Borough of Shickshinny (Authority)[1] and dismissing the Township's complaint before the Commission, and the Commission's January 18, 2024 order denying reconsideration (Reconsideration Order). The sole issue before this Court is whether the Commission misinterpreted the nature of the Township's complaint and erroneously applied the Municipality Authorities Act (MAA)[2] and the Public Utility Code (Code)[3] when it concluded that it lacked jurisdiction over the matter. After review, this Court vacates the Commission's order and remands the matter to the Commission for further proceedings.

---

[1] The Authority, as intervenor, filed a brief to this Court in support of the Commission's decision.

[2] 53 Pa.C.S. §§ 5601-5623.

[3] 66 Pa.C.S. §§ 101-3316.

The Township and the Authority are located in Luzerne County (County). The Borough of Shickshinny (Borough) established the Authority in 1973. *See* Reproduced Record (R.R.) at 7a. The Authority provides sewage treatment services to the Borough and a portion of the Township.[4] *See id.* On November 18, 1992, the Authority and the Township entered into a sewage treatment agreement wherein the Authority agreed to provide sewage treatment disposal services to the Township as a single bulk customer (Sewage Treatment Agreement). *See id.* at 7a-8a. Prior to terminating the Sewage Treatment Agreement, the Authority charged Township customers $134.00 per Equivalent Dwelling Unit per quarter. *See id.* at 8a.

On September 11, 2020, the Authority notified the Township that it was terminating the Sewage Treatment Agreement. *See id.* Following the termination, on January 1, April 1 and July 1, 2021, the Authority invoiced Township customers $75.00 per quarter.[5] *See id.* On January 7, 2021, the Township filed a Formal Complaint (Complaint) with the Commission, alleging therein that the Authority is operating in the Township by providing wastewater treatment and disposal services beyond its jurisdictional limits without a Commission-issued Certificate of Public Convenience (Certificate) and requesting that the Commission order the Authority to immediately cease billing Township residents and return all collected monies to the residents until the Authority obtains a valid Certificate.[6] *See* R.R. at 65a-67a.

---

[4] There are approximately 220 residential customers and 8 commercial customers in the Township. *See* R.R. at 8a.

[5] The Authority did not invoice Township customers for the fourth quarter of 2021, due to the Commission's intervention.

[6]     [T]he Township argue[d that] the [] Authority[,] upon terminating the [Sewage Treatment Agreement] and beginning to directly bill Township customers beyond its jurisdiction[,] thereby became a public utility as defined under Section 102 of the Code, requiring Commission oversight. Since the [] Authority billed Township

2

On September 3, 2021, the Commission's Bureau of Investigation and Enforcement (I&E) filed a Notice of Intervention seeking a civil penalty.

Following an October 4, 2022 evidentiary hearing on the Complaint, on June 12, 2023, Administrative Law Judge (ALJ) Conrad A. Johnson (ALJ Johnson) issued an initial decision (Initial Decision) sustaining the Complaint and finding that the Township had established its burden of proving that the Authority operates as a public utility without a required Commission-issued Certificate. ALJ Johnson denied the Township's refund request and I&E's request for a civil penalty.

On June 30, 2023, the Authority filed exceptions (Exceptions) alleging, *inter alia*, that (1) the Commission lacks jurisdiction over the Authority's rates and service; (2) the Commission lacks jurisdiction to determine the Authority's corporate limits; (3) the Commission lacks jurisdiction over the Authority's wastewater treatment services; and (4) the Commission lacks jurisdiction over the Authority's rates and may not order a refund. *See* R.R. at 12a. By November 1, 2023 order (November 2023 Order), the Commission granted the Exceptions in part and denied them in part, and modified the Initial Decision, finding that because the Commission lacks jurisdiction over municipal authorities' rates and services, it lacked jurisdiction over the Complaint.

On November 14, 2023, the Township filed a Petition for Reconsideration (Reconsideration Petition), and I&E filed a letter in support thereof. By November 16, 2023 order, the Commission granted the Reconsideration Petition pending review and consideration of the merits. *See* Township Br., Appendix C. On

customers for service during the first three quarters of 2021 without holding a Certificate . . . , the Township claims it and other Township customers are entitled to a refund under Section 1312[(a)] of the Code[,] 66 Pa.C.S. § 1312(a).

Township Br., Appendix A at 26 (citation omitted).

3

January 18, 2024, the Commission denied the Township's Reconsideration Petition, observing, in pertinent part:

> The Commission explained [in the November 2023 Order] that historically, Commission jurisdiction has existed over municipal utilities providing service outside of their political boundaries. However, the Commission's jurisdiction presently extends only to municipalities, not municipal authorities, because the enactment of the [MAA] removed municipal authorities from Commission jurisdiction and, instead, vested the courts of common pleas with exclusive jurisdiction over rates and services of municipal authorities. Therefore, the Commission has no authority over entities created and operating under the [MAA].
>
> Furthermore, the November 2023 Order explained that the [c]ourts have reviewed and upheld this statutory language in the [MAA] with respect to Commission jurisdiction over municipal authorities. . . . [T]he Supreme Court of Pennsylvania, the Superior Court of Pennsylvania, and the Commonwealth Court of Pennsylvania have all held that the [MAA] provides the courts of common pleas, not the Commission, with exclusive jurisdiction over the rates and service of a municipal authority within, and beyond, the corporate boundaries of the municipality which created it.
>
> In addition, the November 2023 Order explained that the Commission has held that the jurisdiction over the rates and service of municipal authorities, within and outside of the limits of the municipality which created the authorities, lies with the courts of common pleas, and not the Commission.
>
> The November 2023 Order concluded that the evidence of record demonstrated that [the Authority] is a municipal authority duly organized under the [MAA] and is authorized to furnish wastewater service in the Commonwealth [of Pennsylvania (Commonwealth)]. Therefore, the Commission concluded that it lacks jurisdiction over the issues raised by the Township's Complaint because the [MAA] provides that jurisdiction over the rates and services of municipal authorities, beyond, as well as within, the limits of the municipality

4

> which created the authority, is vested exclusively with the courts of common pleas.

Township Br., Appendix D, Reconsideration Order at 5-6 (citations and footnotes omitted). The Township appealed to this Court.[7]

The Township first asserts that the Code requires a municipal authority operating outside its corporate limits to secure a Certificate, and the Commission erroneously concluded that it lacked jurisdiction over the Township's Complaint despite that the trial court has exclusive jurisdiction over questions involving rates or service, and the Complaint does not relate to such issues.

> Section 1102(a)(5) of the Code provides, in relevant part:

> **(a)** *General rule.* — Upon the application of any public utility and the approval of such application by the [C]ommission, evidenced by its [Certificate] first had and obtained, and upon compliance with existing laws, it shall be lawful:

> . . . .

> **(5)** For any municipal corporation to acquire, construct, or begin to operate, any plant, equipment, or other facilities for the **rendering or furnishing to the public of any public utility service beyond its corporate limits**.

66 Pa.C.S. § 1102(a)(5) (emphasis added). Further, Section 102 of the Code defines *municipal corporation* as "[a]ll cities, boroughs, towns, townships, or counties of this Commonwealth, and also any **public** corporation, **authority**, or body whatsoever created or organized under any law of this Commonwealth for the purpose of rendering any service similar to that of a public utility." 66 Pa.C.S. § 102 (emphasis added).

---

[7] "This Court's review is limited to determining whether the Commission violated constitutional rights, committed an error of law, rendered a decision that is not supported by substantial evidence, or violated its rules of practice." *Romeo v. Pa. Pub. Util. Comm'n*, 154 A.3d 422, 427 n.11 (Pa. Cmwlth. 2017).

5

Section 1501 of the Code provides, in pertinent part:

> Any public utility service[8] being furnished or rendered by **a municipal corporation beyond its corporate limits shall be subject to regulation and control by the [C]ommission** as to service and extensions, with the same force and in like manner as if such service were rendered by a public utility.

66 Pa.C.S. § 1501 (emphasis added).

Notwithstanding, with respect to municipal authorities, Section 5607(d)(9) of the MAA, which describes municipal authorities' purposes and powers, confers jurisdiction "on the court of common pleas of the county where the project is located" with respect to "the reasonableness or uniformity of a rate fixed by an authority or the adequacy, safety, and reasonableness of the authority's services, including extensions thereof" and states that "[t]he court of **common pleas** shall **have** exclusive **jurisdiction to determine questions involving rates or service**." 53 Pa.C.S. § 5607(d)(9) (emphasis added). Thus, the MAA does not confer jurisdiction on the common pleas courts for *all* disputes involving municipal authorities but, rather, *only* those involving "rates or service." *Id*.

The Township acknowledges that "jurisdiction for matters questioning the reasonableness or uniformity of a rate fixed by an authority or the adequacy, safety[,] and reasonableness of the authority's services lies exclusively with the court of common pleas." Township Br. at 18. However, the Township disputes the

---

[8] Section 102 of the Code that the term *service*

> [u]sed in its broadest and most inclusive sense, includes any and all acts done, rendered, or performed, and any and all things furnished or supplied, and any and all facilities used, furnished, or supplied by public utilities, or contract carriers by motor vehicle, in the performance of their duties under this part to their patrons, employees, other public utilities, and the public, as well as the interchange of facilities between two or more of them[.]

66 Pa.C.S. § 102.

6

Commission's assertion that "the Commission's jurisdiction presently extends only to municipalities, not municipal authorities[,]" and that "[t]he enactment of the [MAA] in 1945 removed municipal authorities from Commission jurisdiction." Township Br., Appendix B, November 2023 Order at 25. Instead, the Township argues that Section 5607(d)(9) of the MAA

> does not . . . remove all regulatory authority from the Commission, including the requirement of the . . . Code that municipal authorities acting outside of their jurisdic[ti]on secure a [C]ertificate . . . and comply with the provisions of the . . . Code that do not relate to the "reasonableness or uniformity of a rate fixed by an authority or the adequacy, safety, and reasonableness of the authority's services."

Township Br. at 18 (quoting 53 Pa.C.S. § 5607(d)(9)).

In its brief, the Commission notes that both in the November 2023 Order and the Reconsideration Order, "the Commission explained that its jurisdiction currently extends only to municipal corporations providing extraterritorial utility service, not to municipal authorities incorporated under the MAA providing service outside of the corporate limits of the municipal corporation that incorporated the municipal authority." Commission Br. at 25. Because the Authority is a municipal authority incorporated under the MAA, the Commission argues that Section 5607(d)(9) of the MAA specifically requires issues regarding the extension of the Authority's services to be brought in the court of common pleas of the county where the project is located.

The Commission cites to numerous cases that purportedly support its interpretation of Section 5607(d)(9) of the MAA. *See* Commission Br. at 16 (citing *Rankin v. Chester Mun. Auth.*, 68 A.2d 458, 460 (Pa. Super. 1949)) (per the MAA, "the court of common pleas has exclusive jurisdiction to inquire into the reasonableness of **rates** charged by a municipal authority beyond[,] as well as

7

within[,] the corporate limits of the municipality which created it") (emphasis added); *Elizabeth Twp. v. Mun. Auth. of McKeesport*, 447 A.2d 245 (Pa. 1982) (declaring that the amended MAA provision providing that the courts of common pleas shall have exclusive jurisdiction over challenges to **rates** set by a municipal authority was intended to reject the holding in *State College Borough Authority v. Pennsylvania Public Utility Commission*, 31 A.2d 557 (Pa. Super. 1943), that had permitted the Commission to hear municipal authorities' **rates** challenges).

The Commission's cited cases involve **rates** for which Section 5607(d)(9) of the MAA explicitly grants the court of common pleas jurisdiction. However, none of the aforementioned cases address whether the Commission has jurisdiction over municipal authorities concerning the Code's mandate that municipal authorities obtain Certificates when furnishing service beyond their corporate limits. To conclude that courts of common pleas have exclusive jurisdiction over complaints involving a municipal authority's failure to obtain a Certificate for extraterritorial service, this Court must construe the requirement that the acquisition of a Certificate relates to "the reasonableness or uniformity of a **rate** fixed by an **authority or the adequacy**, **safety**, **and reasonableness** of the authority's **services**[.]" 53 Pa.C.S. § 5607(d)(9) (emphasis added).

"In construing the language within a statute, we must give effect to every word of the statute." *S & H Transp., Inc. v. City of York*, 140 A.3d 1, 7 (Pa. 2016); *see also Frazier v. Workers' Comp. Appeal Bd. (Bayada Nurses, Inc.)*, 52 A.3d 241, 245 (Pa. 2012) ("[A] [c]ourt should construe statutes to give effect to all of their provisions, and should not ignore language nor render any portion of the statute superfluous."). The MAA did not grant common pleas courts blanket jurisdiction over municipal authorities. Rather, it limited a common pleas court's exclusive jurisdiction to "**questions involving rates or service**." 53 Pa.C.S. § 5607(d)(9) (emphasis added).

8

Section 1103(a) of the Code provides in pertinent part that "[a] [C]ertificate . . . shall be granted by order of the [C]ommission, only if the [C]ommission shall find or determine that **the granting of such [C]ertificate** is **necessary or proper** for the service, accommodation, convenience, or safety of the public." 66 Pa.C.S. § 1103(a) (emphasis added). Thus, the primary consideration in obtaining a Certificate is whether the granting of the Certificate is "necessary or proper[.]" *Id.* This issue does not "involv[e] rates or service." 53 Pa.C.S. § 5607(d)(9).

Further undercutting the Commission's argument that it lacks such jurisdiction, the Commission has, in fact, issued a Certificate to a municipal authority. In *Middle Smithfield Township Municipal Authority v. Maula* (Pa. Cmwlth. No. 89 C.D. 2008, filed Oct. 24, 2008),[9] the Department of Environmental Protection issued an administrative order directing the township and/or its authorized agents to assume the operation and control of a sewage treatment plant. The township's municipal authority applied to the Commission for a Certificate pursuant to Section 1102(a)(2) of the Code, 66 Pa.C.S. § 1102(a)(2), confirming the Commission's approval of the prior owner's/operator's abandonment of service.

More recently, in *East Dunkard Water Authority v. Southwestern Pennsylvania Water Authority* (Pa. Cmwlth. No. 116 C.D. 2020, filed Nov. 16, 2020), this Court affirmed the trial court's decision that sustained one of the Southwestern Pennsylvania Water Authority's preliminary objections to the East Dunkard Water Authority's (EDWA) complaint for declaratory judgment and

---

[9] This Court's unreported memorandum opinions issued after January 15, 2008, may be cited "for [their] persuasive value, but not as binding precedent." Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a). The unreported opinions referenced herein are cited for their persuasive value.

9

equitable relief because EDWA failed to produce evidence that it had obtained a Certificate. This Court explained:

> Although we recognize that, in and of itself, a municipal corporation is not included in the definition of public utility in the . . . Code, once a municipal corporation wishes to provide utility services beyond its boundaries, it is treated as a public utility, subject to the jurisdiction of the [Commission]. Section 1102(a)(5) of the . . . Code, 66 Pa.C.S. § 1102(a)(5), states, in pertinent part:
>
>> [U]pon the application of any public utility **and the approval of such application by the [C]ommission, evidenced by its [C]ertificate** . . . first had and obtained, and upon compliance with existing laws, it shall be lawful: . . . . (5) [**f]or any municipal corporation to** acquire, construct, or **begin to operate**, any plant, equipment, or other facilities for the rendering or furnishing to the public of **any public utility service beyond its corporate limits**.
>
> (Emphasis added.)
>
> In addition, Section 1501 of the . . . Code, 66 Pa.C.S. §1501, states, in pertinent part: "[A]**ny public utility service being furnished or rendered by a municipal corporation beyond its corporate limits shall be subject to regulation and control** by the [C]ommission as to service and extensions, **with the same force and in like manner as if such service were rendered by a public utility**." (Emphasis added[.])[]
>
> As this Court noted in *Borough of Ridgway v. Pennsylvania Public Utility Commission*, 480 A.2d 1253 (Pa. Cmwlth. 1984), a case in which a municipality was providing sewer service to the public beyond the municipality's boundaries: "[T]he answer to the question of whether the [b]orough is subject to the jurisdiction of the [Commission] in this matter, inasmuch as it is controlled by the conclusion that the [b]orough is a direct provider of extraterritorial sewer service to the public, must be yes. Such being the case, a [C]ertificate . . . is

necessary." Further in *In re Acquisition of Water System in White Oak Borough*, 93 A.2d 437, 439 (Pa. 1953), our Supreme Court stated: "[**T**]**he City** of McKeesport [(City)] **in operating a water distribution system beyond its corporate limits is subject**, **as we have seen**, **to the jurisdiction of the** [**Commission**] and consequently this [a]uthority cannot acquire by any device or means whatsoever all or any part of the City's water [d]istribution system without first obtaining the approval of the [Commission]." (Emphasis added.) The same is true in the matter *sub judice*. EDWA, as a creature of Dunkard Township, cannot circumvent [Commission] approval by simply assuming the [a]ssociation's private water distribution system and providing water service beyond Dunkard Township, where it has not demonstrated a right to do so via a [C]ertificate . . . .

*E. Dunkard*, slip op. at 16-17 (footnotes omitted). As in *East Dunkard*, this Court concludes that the Commission had jurisdiction to consider the Township's Complaint challenging the Authority's operation without a Certificate.[10]

For all of the above reasons, this Court vacates the Commission's November 2023 Order and remands the matter to the Commission for further proceedings consistent with this Opinion.[11]

_____
ANNE E. COVEY, Judge

_____

[10] The Authority argues that the Township is raising a contractual dispute that the Commission lacks jurisdiction to resolve because it is "predicated upon the alleged termination of the . . . Sewage Treatment Agreement . . . ." Authority Br. at 14. Nonetheless, the "Reason for Complaint" states only that "[t]he [Authority] is operating in the Township . . . without a Certificate . . . ." R.R. at 66a. Although the *requested relief* is for the Commission to order the Authority to "immediately stop billing [Township] residents . . . and return all monies collected until after a valid Certificate . . . is obtained[,]" the requested remedy seeking **the return of fees** collected while the Authority was allegedly illegally operating in the Township does not transform this matter into a contract dispute.

[11] Given this Court's disposition of the matter, it does not address whether the Commission properly denied the Township's Reconsideration Petition.

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Conyngham Township,             :
                  Petitioner     :
                                   :
         v.                :
                                   :
Pennsylvania Public Utility   :
Commission,                 :    No. 113 C.D. 2024
                 Respondent   :

## O R D E R

AND NOW, this 4th day of October, 2024, the Pennsylvania Public Utility Commission's (Commission) November 1, 2023 order is vacated, and the matter is remanded to the Commission for further proceedings consistent with this Opinion.

Jurisdiction is relinquished.

_____
ANNE E. COVEY, Judge