Calabrese *v.* Collier Township Municipal Authority, Appellant.

Argued March 18, 1968.   Before Musmanno, Jones, Cohen, Eagen, O'Brien and Roberts, JJ.

*John A. Robb,* with him *Louis D. Cooper,* and *Royston, Robb, Leonard, Edgecombe, Miller & Shorall,* for appellants.

*James A. Ashton,* with him *Robert King Stitt, III,* and *Ashton, Stitt & Valaw,* for appellees.

OPINION BY MR. JUSTICE JONES, April 16, 1968:

On September 17, 1948, by ordinance, Collier Township (Township), Allegheny County, created the Collier Township Municipal Authority (Authority), for the purpose of acquiring, constructing, maintaining, operating and holding water works, water supply works and a water distribution system. The particular project for which the Authority was created was abandoned in 1951 and the Authority's activities remained dormant until 1958. On November 5, 1958, the Township reorganized the Authority for the purpose of handling sewer projects and, on January 6, 1959, the Township transferred whatever sewer facilities it owned, for the nominal consideration of $1.00, to the Authority.

The immediate purpose underlying the reorganization of the Authority was to enable it to handle a proposed "interceptor sewer" for a certain United States Army facility in the Robinson Run area of the township. It must be noted that, prior to reorganization of the Authority, the Township had constructed certain sewer feeder lines in the Colecrest area of the township to connect with its then existing sewage lines but, after the Allegheny County Sanitary Authority (Alcosan) had constructed a larger sewer trunk line, the sewage from the Colecrest area was thereafter handled by the Allegheny County Sanitary Authority at a rate of 30¢ per 1,000 metered gallons of water used. Moreover, prior to the time of reorganization of the Authority, the Township had maintained sewage

lines only in certain sections of the Kirwin Heights area of the township.

In December 1959, the Township caused certain engineering studies and an investigation to be made covering all the sewage facilities of the Township save those in the Colecrest area. At that time the Colecrest, Kirwin Heights and Woodville State Hospital areas of the township all were within the service area of the Allegheny County Sanitary Authority, but the remaining portions of the township were not.

On April 9, 1959, the Authority had no construction of any nature under way, there were no outstanding Authority bonds, and the Authority's sole indebtedness was in the amount of $15,000, which represented the cost of engineering services and the construction of the sewer feeder lines in the Colecrest area. On that date, the Authority, by an appropriate resolution, fixed a sewage rate at 80¢ per 1,000 metered gallons of water used up to 400,000 gallons, and a slightly reduced rate for water used in excess of 400,000 metered gallons. Several months after fixing such sewage rates, the Authority sent out bills to all users of sewage service in the township.

On November 23, 1960, five residents of the Colecrest area of the township,[1] who, allegedly, have not been nor will be benefited by the Authority's plans to place sewers in other areas of the township, instituted an action in equity against the Township and the Authority. Fourfold relief was sought: (1) an injunction restraining the Township and the Authority from collecting sewage fees in excess of the rates charged prior to April 9, 1959, i.e., in excess of 30¢ per 1,000 gallons; (2) a declaration that the Authority resolution which fixed the rates at 80¢ per 1,000 gallons was

---

[1] Seventy-five per cent of the homes in this area are serviced by septic tanks and not by sewers.

invalid; (3) a refund of excess charges paid by the plaintiffs since the date of the Authority's resolution; and (4) a revision of the rate structure. Upon issues joined and after hearings, the Court of Common Pleas of Allegheny County decreed that: (1) it had jurisdiction of the subject matter of the action; (2) the Authority resolution was invalid and inapplicable to the plaintiffs beginning January 1, 1961; (3) the reasonable rate should be 55¢, not 80¢, per 1,000 metered gallons of water used; (4) the Authority and the Township be restrained from collecting rates in excess of 55¢ per 1,000 gallons of water used after January 1, 1961. From that decree the instant appeal stems.

At the outset of this proceeding, the Authority, by way of preliminary objections, had moved to dismiss the equity action on the ground that plaintiffs had an adequate remedy at law. Several months thereafter, on the basis of an agreement by counsel for the Authority as well as the Township, the court entered an order directing the preliminary objections to be withdrawn. On this appeal, the Authority now questions, despite it previous agreement, the jurisdiction of the court below sitting in equity to entertain this action.

It is hornbook law that jurisdiction over a cause of action or the subject matter of an action cannot be conferred by the agreement or consent of the parties: *Papencordt v. Masterwork Paint Co.*, 412 Pa. 508, 511, 194 A. 2d 878 (1963); *Brenner v. Sukenik*, 410 Pa. 324, 328, 189 A. 2d 246 (1963); *McGinley v. Scott*, 401 Pa. 310, 316, 164 A. 2d 424 (1960). Thus, despite counsel's agreement in the court below, initially we must inquire whether the court below had the jurisdictional competency to pass upon the reasonableness of the rates fixed by the Authority.

The Authority was created under the provisions of the Municipality Authorities Act of 1945 (Act of May

294

2, 1945, P. L. 382, §1 et seq., as amended, 53 P.S. §301).
Section 4 B. (h), of that statute (as amended, 53 P.S.
§306) gives an Authority certain rights and powers,
including the right to "fix, alter, charge and collect
rates and other charges in the area served by its fa-
cilities at reasonable and uniform rates to be deter-
mined exclusively by it, for the purpose of providing
for the payment of the expenses of the Authority, the
construction, improvement, repair, maintenance and
operation of its facilities and properties, the payment
of the principal of and interest on its obligations, and
to fulfill the terms and provisions of any agreements
made with the purchasers or holders of any such ob-
ligations, or with the municipality incorporating or
municipalities which are members of said Authority or
with any municipality served or to be served by said
Authority, and to determine by itself exclusively the
services and improvements required to provide ade-
quate, safe and reasonable service, including exten-
sions thereof, in the areas served."

Section 4 B. (h) further provides that any person
who challenges the reasonableness or the uniformity
of any rate fixed by an Authority may bring suit
against the Authority in the court of common pleas
of the county, inter alia, wherein the project is lo-
cated and that the "court of common pleas shall have
*exclusive* jurisdiction to determine all such questions
involving rates or service." (Emphasis added).

Do the provisions of this statute furnish such an
adequate remedy at law as precludes equity from en-
tertaining jurisdiction in a matter involving the rea-
sonableness and uniformity of rates charged by an Au-
thority? If they do, the court below should not have
entertained jurisdiction.

The Act of March 21, 1806, P. L. 558, 4 Sm. L. 326,
§13, 46 P.S. §156, provides, inter alia: "In all cases

where a remedy is provided . . . or anything directed to be done by any act or acts of assembly of this commonwealth, the directions of the said acts shall be strictly pursued . . . ." Equity has "no jurisdiction to inquire into a controversy where to do so would obviate a statutory procedure provided by the legislature for its resolution": *Commonwealth v. Glen Alden Corp.*, 418 Pa. 57, 59, 60, 210 A. 2d 256 (1965).[2] See: *Lurie v. Republican Alliance*, 412 Pa. 61, 63, 192 A. 2d 367 (1963); *Cathcart v. Crumlish*, 410 Pa. 253, 256, 189 A. 2d 243 (1963) and authorities therein cited.

Since appellees so contend, we must consider whether, when the legislature mandated a "court of common pleas" as the *exclusive* tribunal to determine the reasonableness of the rates of an Authority, it intended thereby to have such determination made by a "court of common pleas" sitting in equity?

Insofar as the exercise of equity jurisdiction by a court of common pleas is concerned, Pennsylvania's legal history is unique.[3] Although from earliest times courts of common pleas in Pennsylvania did recognize and apply equitable principles *as part of the common law* of the Commonwealth (*Morton's Estate*, 201 Pa. 269, 270, 271, 50 A. 933 (1902)), courts of common pleas were strictly common law courts which neither possessed nor exercised the powers of a court of chancery by reason of an existing public prejudice against chancery courts.[4] However, gradually over the years,

---

[2] The exception to this rule, i.e., where the pursuit of the statutory remedy, in a particular case, would cause irreparable harm (*Duquesne Light Co. v. Upper St. Clair Township*, 377 Pa. 323, 339-342, 105 A. 2d 287 (1954); *Commonwealth v. Glen Alden Corp.*, supra, p. 61) cannot be invoked within the factual matrix of the instant litigation.

[3] See: Pomeroy's Equity Jurisprudence (5th ed.) Vol. 1, §§338, 342, incl.; 1 Standard Pennsylvania Practice, pp. xix-xxi, incl.

[4] Apparently, this prejudice arose from the fact that a trial in chancery consisted of a trial by a single judge as distinguished

by constitutional fiat (cf. Art. V, §20 of the Constitution of Pennsylvania) and by legislation, courts of common pleas were granted chancery powers in certain specified areas. However, the extent to which a court of common pleas may exercise such chancery powers lies within the control of the legislature.[5]

A court of common pleas is a constitutional court whose jurisdiction is general in all matters involving the law but is limited in matters involving equity to the extent delineated by the legislature. When the legislature vested the exclusive jurisdiction in courts of common pleas to determine the reasonableness of rates fixed by a municipal authority, the tribunal designated to exclusively determine such matter was a "court of common pleas" in the common law sense and not in the chancery or equitable sense.[6] Before a court of common pleas sitting *in equity* can entertain jurisdiction the ordinary rules for determining the jurisdiction of an equity court apply. (Cf. *Kane v. Morrison*, 352 Pa. 611, 44 A. 2d 53 (1945); *Thompson v. Morrison*, 352 Pa. 616, 44 A. 2d 55 (1945).

---

from a trial by jury in a court of law, and, as this Court held in *North Penna. Coal Co. v. Snowden*, 6 Wright, 42 Pa. 488 (1862), the legislature lacked constitutional power to transfer any part of the jurisdiction of a court of law, i.e., a court of common pleas, to a court which proceeded according to the course of a court of chancery. See: *Tillmes v. Marsh*, 67 Pa. 507, 511 (1871).

[5] For an excellent discussion of the addition of chancery powers to courts of common pleas, see: *Penn Anthracite Mining Co. v. Anthracite Miners of Pennsylvania*, 318 Pa. 401, 406-411, 178 A. 291 (1935).

[6] The fixing of rates to be charged for public service is a subject within the control of the legislature. See: *Leiper v. Baltimore, etc. R.R. Co.*, 262 Pa. 328, 105 A. 551 (1918); *McKeesport v. Equitable Gas Co.*, 268 Pa. 233, 110 A. 926 (1920); *Pittsburgh v. Philadelphia Co.*, 268 Pa. 234, 110 A. 926 (1920); *Beetem v. Carlisle L., H. & P. Co.*, 273 Pa. 82, 116 A. 676 (1922).

Counsel for appellees urge that the statutory definition of a "court of common pleas" includes a court of common pleas exercising equitable powers and cite *Hamilton's Appeal,* 340 Pa. 17, 16 A. 2d 32 (1940) and *Philadelphia's Petition,* 343 Pa. 47, 21 A. 2d 876 (1941), as illustrative that equity is an accepted method of raising questions as to the reasonableness of an Authority's rates. *Hamilton's* and *Philadelphia's Petition* were not equity proceedings but proceedings under the Act of May 21, 1921, P. L. 1054, they did not involve an Authority's rates and are clearly inapposite. *Rankin v. Chester Municipal Authority,* 165 Pa. Superior Ct. 438, 68 A. 2d 458 (1949), and *Bloomsburg Municipal Authority v. Bloomsburg Cooperative Canners, Inc.,* 203 Pa. Superior Ct. 393, 199 A. 2d 502 (1964), were proceedings in equity which involved determination of the reasonableness of rates of an Authority but neither in *Rankin* nor *Bloomsburg* was the question of jurisdiction raised. Neither *Rankin* nor *Bloomsburg* control the instant appeal and to the extent they appear to sanction an equity proceeding as a medium for passing upon the reasonableness of an Authority's rates are overruled.

The statute provides an *exclusive* remedy for passing upon the reasonableness of the rates of a municipal Authority by a proceeding before a tribunal to which it has given *exclusive* jurisdiction to determine such questions. Such tribunal is not a court of common pleas sitting as a chancery court, as appellees urge, but a common law court of common pleas. There is neither allegation nor proof that the legislative or statutory remedy is inadequate and, under such circumstances, the court below sitting in equity had no jurisdiction to entertain this question. Despite the Authority's agreement to the contrary in the court below, jurisdiction did not vest in the court below; we must determine this question adversely to appellees.

Parenthetically, we note that if the court below did have jurisdiction, this appeal would have to be quashed. The statute provides that an appeal from the decision of the court below must be taken to the Superior Court and not the Supreme Court; of course, this procedural defect could have been remedied by a remission of the appeal to the Superior Court. However, the statute further provides that an appeal must be taken within 30 days of the final decision in the court below and, in the instant case, the appeal was not taken until 86 days after rendition of the decree; therefore, if the court below did have jurisdiction, this appeal necessarily would have had to be quashed because untimely filed.

While it is unfortunate for the parties that we cannot reach the merits of this appeal, nevertheless, if we are to maintain consistency in the application of well-settled principles applicable to equitable jurisdiction we have no other recourse than to reverse this decree because the court below lacked the jurisdictional competency to entertain this action.

Decree reversed. Each party to pay own costs.

Mr. Justice Roberts concurs in the result.

Mr. Chief Justice Bell took no part in the consideration or decision of this case.