West Homestead Borough School District *v.* Allegheny County Board of School Directors, Appellant.

Argued October 10, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*John B. Nicklas, Jr.*, with him *McCrady & Nicklas*, for appellants.

*Aaron Cohen*, with him *Cohen & Popiel*, for appellee.

OPINION BY MR. JUSTICE JONES, October 9, 1970:

The basic issue raised on this appeal is whether the Court of Common Pleas below had jurisdiction to entertain the action.

In 1968, the Supplemental Reorganizational Act [Act][1] was passed to supplement the Public School Code of 1949.[2] The Allegheny County Board of School Directors [County Board], pursuant to Section 2(a) of the Act,[3] held hearings to aid in its *preparation* of a plan for the organization of administrative units. Thereafter, the County Board adopted a plan under which the School District of the Borough of West Homestead [appellee] was placed in Unit 21. Unit 21 included the School Districts of West Homestead, Homestead and Munhall. Dissatisfied with being placed in Unit 21, appellee petitioned the State Board of Education [State Board] to review the County Board's decision,[4] and a date was set for a hearing before the State Board.

Eight days prior to the scheduled hearing date, the appellee instituted an action in equity, in the Court of Common Pleas of Allegheny County, against the County Board. Appellee sought two types of relief in this equity action: first, that a mandatory injunction be issued, directing the County Board to provide findings of fact and conclusions relative to the Allegheny County plan; and, second, that the County Board be restrained from participating in any State Board hearings on the County Plan, until such time as the findings and conclusions would be served on the appellee.[5]

---

[1] Act of July 8, 1968, P. L.    , 24 P.S. §2400.1 et seq. (Supp. 1970).

[2] Act of March 10, 1949, P. L. 30, §1-101 et seq.

[3] Supra, note 1, at §2400.2.

[4] Section 3 of the Act provides for such a review. *Supra* note 1, at §2400.3.

[5] Appellee's attorney appeared before the State Board at the scheduled hearing time and made a statement, but he refused to take part in the hearing. His statement was to the effect that the hearing should not proceed, because of the pending equity action and also because the State Board had no jurisdiction insofar as the School District was concerned.

Preliminary objections were filed to appellee's complaint, wherein the appellants challenged the jurisdiction of the court below on the basis that the Act provided an exclusive statutory administrative remedy which was still available and open to the appellee. The court below ruled that it did have jurisdiction and issued an order dismissing the preliminary objections. The County Board has now appealed from that order.

Initially, we will consider whether this appeal should be dismissed as having been taken from an interlocutory order. The right of the County Board to appeal from the lower court's dismissal of the preliminary objections has not been questioned by the appellee. Nevertheless, the Supreme Court only has "such jurisdiction as shall be provided by law." *Pa. Const.* art V, §2(c). We cannot acquire jurisdiction to entertain an appeal either by the consent of the parties or by our own acquiescence, if such jurisdiction is not provided by law. *Commonwealth v. Bey*, 437 Pa. 134, 262 A. 2d 144 (1970). Accordingly, we deem it appropriate to raise this issue *sua sponte*. See *Calabrese v. Collier Twp. Mun. Auth.*, 430 Pa. 289, 293, 240 A. 2d 544, 546 (1968).[6]

An order dismissing a party's preliminary objections is interlocutory and, therefore, generally not appealable. *Philadelphia Redevelopment Auth. Appeal*, 413 Pa. 339, 340 n. 1, 196 A. 2d 376, 377-8 n. 1 (1964); *Grosso v. Englert*, 381 Pa. 351, 354, 113 A. 2d 250, 252 (1955). Unless the instant order is within the following scope: a statute, or special rule of law, which obviates the general rule, the instant appeal is premature and must be quashed. *Caplan v. Keystone Weaving Mills, Inc.*, 431 Pa. 407, 246 A. 2d 384 (1968); *Reynolds Metal*

[6]The issue *was* raised by several members of the Court during oral argument of this case, and a supplemental brief thereon, which was requested by the Court, has been filed by the County Board.

*Co. v. Berger,* 423 Pa. 360, 223 A. 2d 855 (1966); *Nachod v. Nachod,* 402 Pa. 60, 166 A. 2d 18 (1960).

The appellants in the case at bar claim that the lower court's order raises a "question of jurisdiction" over the subject matter of the action which is within the scope of the Act of March 5, 1925, P. L. 23, §1, 12 P.S. §672, which reads as follows: "Wherever in any proceeding at law or in equity the question of jurisdiction over the defendant or of the cause of action for which suit is brought is raised in the court of first instance, it shall be preliminarily determined by the court upon the pleadings or with depositions, as the case may require; and the decision may be appealed to the Supreme Court or the Superior Court, as in cases of final judgments." Section 4 of the Act, 12 P.S. §675 then provides: "The right of appeal here conferred is not intended to cover questions of jurisdiction which go to the form of the action alone as between law and equity. . . ."

Preliminarily we should repeat that there is technically no such thing as "equity jurisdiction", even though that phrase has been loosely used in opinions of this Court in the past. We have no separate court of equity; the Court of Common Pleas provides both legal and equitable remedies. For administrative purposes, there may be two "sides" to the Court, but they are both part of the same Court. If, for example, the plaintiff erroneously chooses the "equity side" instead of the "law side", Civil Procedure Rule 1509(c) requires the Court to transfer the action to the "law side" of the Court. No question of "jurisdiction" is involved. "Equity" and "law" are merely forms of action, which are used in the same Common Pleas Court.[7]

[7] *Calabrese v. Collier Twp. Mun. Auth.,* 430 Pa. 289, 240 A. 2d 544 (1968).

Section 4 of the Act of 1925, quoted above, makes it very clear that a choice of "form of the action" between law and equity is not a "question of jurisdiction", for preliminary interlocutory appeal.

Although questions of jurisdiction over the person of the defendant may be relatively frequent, a question of jurisdiction over the cause of action can exist, appealable under the Act of 1925, only in the relatively rare situation where *no "side" of the court has the power and competence* to entertain the action. *Seligsohn Appeal,* 410 Pa. 270, 189 A. 2d 746 (1963).

For more than 150 years, it has been the rule in Pennsylvania that: "In all cases where a remedy is provided, or duty enjoined, or anything directed to be done by any act or acts of assembly of this commonwealth, the directions of the said acts shall be strictly pursued, and no penalty shall be inflicted, or anything done agreeably to the provisions of the common law, in such cases, further than shall be necessary for carrying such act or acts into effect." Act of 1806, March 21, P. L. 58, 4 Sm. L. 326 §13; 46 P.S. §156. See *Calabrese v. Collier Twp. Mun. Auth.,* 430 Pa. 289, 294-95, 240 A. 2d 544, 547 (1968).

This statute says in unambiguous language that, if the legislature provides a specific, *exclusive,* constitutionally adequate method for the disposition of a particular kind of dispute, no action may be brought in any "side" of the Common Pleas to adjudicate the dispute by any kind of "common law" form of action other than the exclusive statutory method. This excludes an action for injunction, or other equitable form of relief, unless the statute provides for it or unless there is some irreparable harm that will follow if the statutory procedure is followed.

It is equally clear that, if the legislative method for disposing of the dispute is *not exclusive,* some appropriate form of *"common law"* action in the Court of

Common Pleas may be available, and the Common Pleas may have "jurisdiction". But, as we have said above, whether this jurisdiction is to be exercised on the "law side" or the "equity side" of the court is not a question of "jurisdiction" on which a preliminary interlocutory appeal may be taken to this Court.

Accordingly, our task in this case is simply to examine the underlying statute which governs this controversy and to determine its effect under the provisions of the Act of 1806 and the opinion in *Calabrese, supra.*

The Act of 1968 provides, in substance, as follows: (1) within thirty days of the effective date of the Act, the State Board "shall adopt standards for approval of administrative units comprised of those school districts which are not in an administrative unit established as a school district . . . taking into account the following factors: topography, pupil population, community characteristics, transportation of pupils, use of existing school buildings, existing administrative units, potential population changes and the capability of providing a comprehensive program of education." (Section 1); (2) when the State Board has formulated these standards, then each County Board of school directors shall prepare a plan of administrative units for the county, which plan must conform to the standards for approval of administrative units adopted by the State Board, and, in the *preparation* of its plan, the County Board shall confer with the board of directors of each school district included therein (Section 2); (3) no plan or organization of administrative units shall be approved in which any proposed school district contains a pupil population of less than 4,000 (with exceptions not presently pertinent) (Section 3); (4) a school district which considers itself aggrieved by the plan of organization of administrative units approved by the County Board may appeal therefrom to the State Board (Sec-

tion 3); and (5) a school district which has appealed to the State Board and which considers itself aggrieved by the final action of the State Board may appeal to the Court of Common Pleas (Section 5).

Our Court has discussed the powers of the State and County Boards in *Chartiers Valley Joint Schools v. Allegheny County Bd. of School Directors*, 418 Pa. 520, 532 (n. 17), 211 A. 2d 487, 494 (1965): "The State Board is empowered to adopt and enforce standards to which plans must conform, but the actual initiative in selecting among the myriad possible combinations which meet those standards is reposed in a local elected body."

The thrust of the County Board's argument is that the Court of Common Pleas below lacked jurisdiction to entertain this action in equity since the Act provides a constitutionally valid[8] statutorily *exclusive* procedure which must be pursued by the appellee, and has not been pursued, that this raises a question of jurisdiction which is within the scope of the Act of 1925, and that the appeal, therefore, is properly taken. This argument is correct.

Even the most cursory reading of the Act reveals a comprehensive and constitutionally adequate procedure which is the exclusive procedure available to a school district which considers itself aggrieved by the actions of the County and State Boards.

Each of the first four sections of the Act, in prescribing the administrative procedure to be followed before an appeal may be taken to the Common Pleas under Section 5 of the Act, uses the mandatory word "shall". The Common Pleas is not to become involved until after the final action of the State Board under Section 3, and the statutory duty of the Common Pleas is to affirm or modify the final plan approved by the

---

[8]The constitutionality of the Act of 1968 was sustained in *Chartiers, supra.*

State Board. Unless the school district has appealed from the County Board to the State Board, approval of the County Board's plan is final and the school district is specifically denied access to review in the Common Pleas under Section 5. (Section 3).

Prior to an appeal from the County Board to the State Board, the entry of a final plan by the State Board, and an appeal therefrom, the school district may not ask the Common Pleas to examine and review the proceedings.

In fact, the appellee followed this statutory procedure while pursuing the present proceedings. On May 9, 1969—one month and twelve days after institution of the equity action—the State Board approved the County Board's plan for organization of school district units for Allegheny County and placed appellee in Unit 21. The appellee, claiming it was aggrieved by the plan, has filed an appeal, pursuant to the Act, in the Court of Common Pleas of Allegheny County, which appeal is now pending.

A Court of Common Pleas has no jurisdiction to consider an action for an injunction, such as that presented in this case, where (1) a constitutionally valid statute provides an explicit and exclusive administrative remedial process, followed by a proceeding in the Common Pleas to review the administrative proceedings *after* they have been concluded, and (2) where the statutory remedy is adequate and compliance with the statutory scheme will not result in irreparable harm.[9]

The court below lacked jurisdiction to entertain any action at this early stage of the administrative proceedings, and was not competent to act.

See *Commonwealth v. Glen Alden Corp.*, 418 Pa. 57, 210 A. 2d 256 (1965) ; *Collegeville Borough v. Phil-*

---

[9] *Commonwealth v. Glen Alden Corporation*, 418 Pa. 57, 210 A. 2d 256 (1965).

122

*adelphia Suburban Water Co.,* 377 Pa. 636, 105 A. 2d 722 (1954).

Appellee argues, in support of the jurisdiction in this action that the County Board and State Board must strictly adhere to the procedure, standards and criteria mandated by the legislature. Thus, since the County Board did not so adhere, the statutory remedy at law is claimed to be inadequate. In support of its argument, appellee points out that the County Board has been mandated to *prepare* a plan of organization of administrative units, and must assign its reasons for any plan submitted to the State Board. However, the County Board, under the plan which it prepared, provided no indication that it had complied with the legislative standards, policies and remedies. It made no finding of fact nor conclusions and assigned no reasons in support of its plan. Lacking such essentials, appellee urges that there is nothing in the County Board's plan which reveals that Unit 21 was organized in accordance with the terms of the Act. Therefore, it is argued, there was nothing before the State Board upon which it could perform its statutory duty of review.

Appellee further claims that a petition for appeal to the court of common pleas, from the State Board's approval of a plan for the organization of administrative units, must demonstrate that the State Board's approval was arbitrary, capricious or constituted an abuse of discretion. Thus, under the instant circumstances, appellee urges that it could not exercise its statutory right of appeal, because the County Board had not prepared a plan of organization suitable for appropriate review by the State Board in accordance with law. Absent the assigned bases for the County Board's plan, the statutory procedure would be inadequate.

It is evident from a reading of the briefs and record that the State Board was never given an opportunity

to review and to approve or disapprove the County Board's plan before the equity action was instituted. If the County Board failed in its legislatively-mandated duties, objections based thereon were available at the hearing before the State Board, from which an appeal to the Common Pleas was permissible. The statutory scheme is clearly adequate.

The appellee chose not to follow the adequate administrative procedures of the statute, but sought to circumvent the statute and to get into the Common Pleas prior to the stage which the legislature directed to be the earliest stage at which the Common Pleas might be involved in the controversy. The constitutionality of the statute has already been sustained in *Chartiers, supra.* Appellee suggested no irreparable harm which would follow from compliance with the statutory review procedures.

The court below had no jurisdiction to entertain such an effort to by-pass the statutory scheme. When the court below sustained its jurisdiction over the subject matter, this became one of those relatively rare cases where an appeal under the Act of 1925 was proper.

Decree reversed. Appellee to pay the costs.

Mr. Justice POMEROY concurs in the result.

Mr. Chief Justice BELL dissents and would quash the appeal.