447 A.2d 292

Nicholas MARTINO

v.

TRANSPORT WORKERS UNION OF PHILADELPHIA–LOCAL 234 and Transport Workers Union of America-AFL-CIO and Southeastern Pennsylvania Transportation Authority.

Appeal of UNION OF PHILADELPHIA–LOCAL 234 and Transport Workers Union of America-AFL-CIO.

Nicholas MARTINO

v.

TRANSPORT WORKERS UNION OF PHILADELPHIA–LOCAL 234 and Transport Workers Union of America-AFL-CIO and Southeastern Pennsylvania Transportation Authority.

Appeal of SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY.

Superior Court of Pennsylvania.

Argued Feb. 25, 1982.

Filed June 25, 1982.

Petition for Allowance of Appeal Granted Oct. 8, 1982.

162

164

Herbert K. Fisher, Philadelphia, for Union of Phila.-Local 234 and Transport Workers Union of America-AFL-CIO, appellants (at No. 2457) and appellees (at No. 2459).

Marcus Manoff, Philadelphia, for Southeastern PA Transp. Authority, appellant (at No. 2459) and appellee (at No. 2457).

Harris T. Bock, Philadelphia, for Martino, appellee.

Before CERCONE, President Judge, and CAVANAUGH, ROWLEY, WIEAND, McEWEN, CIRILLO and MONTEMURO, JJ.

ROWLEY, Judge:

These consolidated appeals present the question whether the courts of common pleas have "subject matter jurisdiction" to hear and decide an action in equity instituted by a former employee against his former public employer and his union seeking relief (1) against the employer for allegedly discharging him in violation of a collective bargaining agreement between the employer and the union and, (2) against the union for an alleged breach of its duty of fair representation during the grievance process under the collective bargaining agreement. The trial court accepted jurisdiction and the union and employer appealed. We hold that the courts of common pleas have such jurisdiction and affirm.

## I.

Prior to August 4, 1977 appellee, Nicholas Martino, was employed by the appellant, Southeastern Pennsylvania Transportation Authority (SEPTA) as a trainman. SEPTA provides public transportation in the greater Philadelphia area and is an instrumentality and agency of the Commonwealth of Pennsylvania. Appellee was also a member in good standing of appellants, Transport Worker's Union of Philadelphia, Local 234 (Local 234) and Transport Workers Union of America, AFL-CIO (International) [Local 234 and the International are hereinafter collectively referred to as the unions]. The unions were the exclusive representative of SEPTA's employees for the purposes of collective bargaining. A collective bargaining agreement (the agreement) was in effect between the unions and SEPTA at all times material to this case.

On August 4, 1977, appellee was discharged by SEPTA on the ground that he was guilty of having made "improper fare collections". The agreement between the unions and SEPTA provided a detailed procedure for the resolution of grievances by first, second and third level grievance hearings and binding arbitration in the event the union appealed the decision made at the third level grievance hearing. Appellee's grievance concerning his discharge was processed through the first three grievance level hearings and he was represented at each hearing by a union representative. At each hearing the grievance was resolved adversely to appellee. The unions then declined to pursue the fourth step arbitration hearing.

Subsequently, on February 21, 1978, appellee filed a complaint in equity against SEPTA and the unions. In the first count, against the unions, appellee alleged that they had breached their fiduciary duty of good faith representation to him during the grievance hearings and by their refusal to seek an arbitration hearing. He requested that the court direct the unions to initiate the arbitration process "nunc pro tunc" and to pay him money damages resulting from their alleged breach. In count two of the complaint, against

SEPTA, appellee claimed that he had been unlawfully and improperly discharged by SEPTA and asked that it be directed to reinstate him to his former position and to pay him compensatory damages resulting from his alleged unlawful discharge.

The appellants filed preliminary objections to the complaint. The preliminary objection filed by the unions was in the nature of a petition raising a question of jurisdiction pursuant to Pa.R.C.P. 1017(b)(1) claiming that the appellee had "failed to . . . exhaust his internal remedies within the union" thereby depriving the trial court of jurisdiction over the subject matter of appellee's suit. SEPTA filed four preliminary objections, two of them being in the nature of a petition raising a question of jurisdiction under Pa.R.C.P. 1017(b)(1). SEPTA claimed first that the collective bargaining agreement provided "a complete and exclusive remedy for" appellee's claim thereby depriving the trial court of jurisdiction and further claiming that exclusive jurisdiction of appellee's complaint had been vested in the Pennsylvania Labor Relations Board (PLRB) by the Legislature when it enacted the Public Employee Relations Act (PERA).[1] Similarly, SEPTA filed an objection under Pa.R.C.P. 1509(b) claiming that appellee had failed to exercise or exhaust an adequate statutory remedy provided by the PERA. In addition to SEPTA's challenge to the jurisdiction of the trial court, it filed a preliminary objection in the nature of a demurrer, pursuant to Pa.R.C.P. 1017(b)(4).

The trial court, in an order entered September 19, 1978, dismissed all of the preliminary objections filed by SEPTA and the unions and directed the defendants to file answers to the complaint. The court concluded that the unions and SEPTA had "not met the burden of establishing that" the trial court lacked jurisdiction. In reaching this conclusion, the court considered the opinions of the United States Supreme Court in *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), and the Supreme Court of Pennsylvania

1. Act of July 23, 1970, P.L. 563, as amended, 43 Pa.C.S.A. §§ 1101.-101 et seq.

in *Falsetti v. Local U. No. 2026, UMWA*, 400 Pa. 145, 161 A.2d 882 (1960). The trial court concluded that the decisions in those two cases had reached "diametrically opposite conclusions". For that reason, the court determined that the issues raised by the preliminary objections were not "clear and free from doubt" and that under such circumstances the objections should be overruled.

The unions filed an appeal at No. 2457 October Term, 1978 in this court from the order of the trial court dismissing their preliminary objection. SEPTA filed an appeal at No. 2459 October Term 1978 from the order dismissing its preliminary objections. The appeals were consolidated for argument before the Court en banc on February 25, 1982. At oral argument counsel for the unions advised the court that the unions no longer desired to pursue their appeal and, on the contrary, supported the argument made on behalf of appellee. Therefore, the appeal filed by the unions will be dismissed and we will consider in this opinion only the arguments raised by SEPTA.

SEPTA argues on appeal that (1) the trial court lacks subject matter jurisdiction to consider appellee's complaint, (2) that the appellee failed to exercise or exhaust his statutory remedy under the PERA and (3) the complaint fails to state a cause of action.

## II.

At the outset, it is appropriate to consider the jurisdiction of this court to entertain SEPTA's appeal and the scope of review to be exercised. Ordinarily an order dismissing preliminary objections to a complaint is interlocutory and therefore, not appealable. *Newkirk v. Phila. Sch. Dist.*, 437 Pa. 114, 261 A.2d 305 (1970); *Village 2 At New Hope, Inc., Appeals*, 429 Pa. 626, 241 A.2d 81 (1968); *Phila. v. Wm. Penn Bus. Inst.*, 423 Pa. 490, 223 A.2d 850 (1966); *2401 Pa. Ave. v. Southland*, 236 Pa.Super. 102, 344 A.2d 582 (1975). However, an exception to the general rule existed under the Act of March 5, 1925, P.L. 23, § 1, 12 P.S. § 672, repealed, Act of April 28, 1978, P.L. 202, § 2(a) (effective

June 27, 1980). Since the Act of 1925 was still in effect on the dates that the appeals of SEPTA and the unions were filed, its provisions are controlling in this case.[2]

The act of 1925 provided that whenever a question of jurisdiction over the cause of action was raised in the trial court, the decision of that court "may be appealed to the Supreme Court or the Superior Court, *as in cases of final judgments*" (Emphasis supplied). Therefore, the order of the trial court disposing of SEPTA's preliminary objections under Pa.R.C.P. 1017(b)(1) and 1509(b) challenging the subject matter jurisdiction of the trial court, is appealable as a final order on that issue.[3]

■ Although an appeal is authorized under the Act of 1925 in this case, our scope of review is exceedingly limited and narrow. The sole issue which the appellate court may consider, in an appeal under the Act of 1925, is the accuracy of the trial court's decision on the question of jurisdiction. *Gardner v. Allegheny Co.*, 382 Pa. 88, 114 A.2d 491 (1955). As the court said in *Welser v. Ealer*, 317 Pa. 182, 184, 176 A. 429, 430 (1935) "No other matters are open for inquiry in" an appeal pursuant to the Act of 1925 from a preliminary determination of the trial court's subject matter jurisdiction. In *Wechsler v. Newman*, 256 Pa.Super. 81, 87, 389 A.2d 611,

**2.** We need not, therefore, consider the question of appellate jurisdiction under Pa.R.A.P. 311(b) which is based in part on the Act of 1925. Compare *Pa. Higher Education Assistance Agency v. DiMassa*, 296 Pa.Super. 529, 442 A.2d 1177 (1982) [Held: Order of the trial court sustaining subject matter jurisdiction was interlocutory and appeal under Rule 311(b) was quashed].

**3.** Appellate jurisdiction of this case was properly in the Commonwealth Court. Act of July 9, 1976, P.L. 586, No. 142, § 2, 42 Pa.C.S.A. § 762, effective June 27, 1978, as amended. However, since the appellee has failed to file an objection to the filing of the appeals in this Court our appellate jurisdiction is perfected. Act of July 9, 1976, P.L. 586, No. 142, § 2, 42 Pa.C.S.A. § 704, effective June 27, 1978, and Pa.R.A.P. 741. Under the circumstances existing in this case and in the interest of judicial economy we have concluded that we should proceed to a resolution of the issues presented rather than transfer the case to the Commonwealth Court. *Jost v. Phoenixville Area School District*, 267 Pa.Super. 461, 406 A.2d 1133 (1979), *Muntan v. City of Monongahela*, 45 Pa.Cmwlth. 23, 406 A.2d 811 (1979).

614 (1978) this Court, in discussing § 1 of the Act of 1925 said: "Under this section, our scope of review is limited to a single question: did the lower court properly determine whether it had jurisdiction?" See also *Sauers v. Pancoast Personnel, Inc.*, 294 Pa.Super. 306, 310, 439 A.2d 1214, 1216 (1982) [dissenting opinion by Shertz, J.].

■ Therefore, the only issue which we have jurisdiction to consider at this time is the propriety of that portion of the trial court's order dealing with SEPTA's preliminary objections under Pa.R.C.P. 1017(b)(1) and 1509(b) challenging the trial court's subject matter jurisdiction. It's ruling on the other preliminary objection filed by SEPTA is not properly before us. We may not consider or pass upon the propriety of the trial court's ruling insofar as it concerns SEPTA's preliminary objection in the nature of a demurrer. The principles applicable to the nature of our review were forcefully set out by Mr. Justice (later Chief Justice) Horace Stern in his opinion for the court in *Witney v. Lebanon City*, 369 Pa. 308, 85 A.2d 106 (1952) where he said, 369 Pa. at 311–312, 85 A.2d at 108:

"Even if it should ultimately be decided that plaintiff's action cannot be maintained because the final estimate of the engineer was, under the terms of the contract, to be conclusive, the question of jurisdiction would not be affected thereby. In *Zerbe Twp. School District v. Thomas*, 353 Pa. 162, 44 A.2d 566, we stated principles which are here applicable, namely that even though a plaintiff have no standing to bring his action, even though his complaint be demurrerable, even though he failed to establish its allegations, even though the court should finally conclude that the relief he seeks should not be granted, not any or all of these circumstances would enter into, much less determine, the question whether the court had jurisdiction of the litigation."

Therefore, insofar as SEPTA, in this appeal, attempts to challenge the trial court's ruling on non-jurisdictional issues, the appeal will be quashed. Our review will be limited *solely* to the question of whether the jurisdictional issue was properly decided by the trial court.

### III.

#### A.

■ The test to be applied in deciding whether subject matter jurisdiction exists was also set forth in *Witney v. Lebanon City*, 369 Pa. at 312, 85 A.2d 106, where Justice Stern said:

> "We there pointed out that the test of jurisdiction was the competency of the court to determine controversies of *the general class* to which the case presented for its consideration belonged,—whether the court had power to *enter upon the inquiry*, not whether it might ultimately decide that it was unable to grant the relief sought *in the particular case* ; that the Act of 1925 was not intended to furnish a shortcut to a determination of the issues of law or fact raised by the pleadings and that it was not concerned with matters going to the right of the plaintiff to *recover* on his cause of action but only with his right to have his cause of action *heard and determined.*"

More recently in *Sperry & Hutchinson Co. v. O'Connor*, 488 Pa. 340, 412 A.2d 539 (1980) the court, in holding that the court of common pleas had subject matter jurisdiction of a petition in escheat, pointed out that the question embraced the "competency" of the trial court to hear and decide controversies and disputes belonging to the "general class" to which the case under consideration belonged. The controlling question is whether the trial court has the power to embark upon the inquiry and not whether the relief sought in that particular case may ultimately be granted. As Mr. Justice Larsen pointed out for the majority "the question of the *power to hear* or adjudicate a controversy in escheat and the question of the *power to escheat* are separate and distinct questions" 488 Pa. at 345, 412 A.2d 541 (emphasis in original). Mr. Justice Roberts, although dissenting on another point, agreed with the majority that the trial court had subject matter jurisdiction. He emphasized, however, that the conclusion that the trial court had jurisdiction to

entertain and consider the case did not in any way answer the question of the petitioner's right to the relief sought.[4]

■ Applying these standards to the appeal before us, the only question for our determination at this time is whether the trial court has the authority and power to entertain, hear, and decide controversies of the *general class* into which the controversy presented by appellee's complaint falls. Whether or not appellee may ultimately recover against SEPTA is not at issue at this time. SEPTA may or may not have a perfectly valid and conclusive defense to appellee's complaint. That issue, however, should be determined preliminarily in the trial court and not by this court in the event we conclude, as we have, that the courts of common pleas of this Commonwealth have jurisdiction to entertain and decide cases of the general class to which appellee's claim belongs. Once it is determined that a trial court has subject matter jurisdiction the case is to be remanded to that court for further proceedings, including the development of the issues by appropriate pleadings, a trial to ascertain or determine issues of fact that are raised, and an ultimate conclusion entered on the merits of the issues raised by the parties. Only then are any of the parties entitled to appellate review and determination of the merits of their respective rights and liabilities. Also see *Wechsler v. Newman*, 256 Pa.Super. 81, 389 A.2d 611 (1978).

4. Mr. Justice Nix, in his dissenting opinion in *Sperry & Hutchinson Co. v. O'Connor*, supra, expressed the view that the Court's "decisions have been far from consistent in determining what is appealable under the Act" of 1925. As examples of such inconsistency he cited cases involving the absence of indispensable parties, a plaintiff's incapacity to sue, questions of venue, and the timeliness of appeals taken to the courts of common pleas. None of those issues are presented of course in the appeals before us. Justice Nix also expressed the opinion that the majority in *Sperry*, supra, had adopted an "unreasonably restricted interpretation" in deciding what issues may be considered and decided in appeals taken under the Act of 1925. In the absence of any clear authority to the contrary, however, we have declined to expand the scope of our review in this case in spite of the thought provoking concerns expressed by Justice Nix as to the possible consequences of a refusal "to allow interlocutory review of matters raising a fundamental limitation on the court's power to act even though the limitation does not amount to a lack of competency in the purest sense." 488 Pa. at 359, 412 A.2d at 549.

## B.

Appellee, in asserting that the trial court has subject matter jurisdiction to entertain and decide cases of the general class to which his case belongs, relies upon the decision of the United State Supreme Court in *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). The trial court, in reaching its conclusion, quoted extensively from the opinion of Mr. Justice White in *Vaca.* However, the opinion in *Vaca v. Sipes,* supra, does not confer jurisdiction or authority on the courts of common pleas of this Commonwealth to entertain or decide the general class of cases to which plaintiff's case belongs.

Initially it should be noted that *Vaca v. Sipes* did not involve a suit by an employee against his employer. In that case the employee sued only his local and international unions for breach of their duty of fair representation. The court's discussion of the employee-employer relationship was unnecessary to its decision and was strongly criticized in the dissenting opinions. The essence of the decision in *Vaca v. Sipes,* however, was that Congress did not preempt the field when it enacted the Labor Management Relations Act[5] [LMRA] and that, therefore, the National Labor Relations Board [NLRB] did not have "exclusive jurisdiction" to hear and consider the employee's claims against his unions. The Supreme Court, in upholding the jurisdiction of the Missouri State Courts to hear and consider the employee's claims went on to hold that the state courts in exercising their jurisdiction over the controversy, had applied an inappropriate standard to adjudicate the union's duty to the plaintiff. The Court said that it was necessary, since the employee's complaint charged a breach by the unions of duties imposed by federal statutes, that federal law govern in determining whether or not the unions' duty had been breached. Thus, at the best, *Vaca* is authority only for the proposition that the LMRA does not deprive the Pennsylvania state courts of jurisdiction in this case. To say that Congress did not deprive the state courts of jurisdiction to entertain and

5. 29 U.S.C. §§ 141 et seq.

decide issues between employees and labor unions is far different from saying that Congress or the Supreme Court of the United States *conferred* jurisdiction on the state courts to entertain and decide such cases.[6]

### C.

Our conclusion, however, that *Vaca v. Sipes* does not confer subject matter jurisdiction on the courts of Pennsylvania does not mean that our courts are without jurisdiction.

 Article 5, § 5 of the Pennsylvania Constitution provides that the court of common pleas shall have "unlimited original jurisdiction in all cases except as may otherwise be provided by law." The constitutional provision was implemented by the General Assembly of Pennsylvania when § 931 of the "Judicial Code" was enacted. 42 Pa.C.S.A. § 931. The legislature provided that the courts of common pleas of the Commonwealth "shall have unlimited original jurisdiction of all actions and proceedings, including all actions and proceedings *heretofore cognizable by law or usage* in the courts of common pleas." [emphasis supplied.] The jurisdiction of the common pleas courts established therein is exclusive. There can be no doubt that the courts of common pleas have for years had the authority granted by law and usage to enforce contracts and fashion remedies for the breach thereof. That authority extends to contracts of employment and contracts entered into by third parties which confer benefits upon an allegedly aggrieved third party beneficiary. Thus, the courts of common pleas have subject matter jurisdiction to consider and decide claims of the general nature and category to which appellee's claim belongs, unless a specific provision of the law can be demon-

**6.** A subsequent decision of the Court in *Hines v. Anchor Motor Freights, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976) involved an action by former employees against their union *and employer* for an alleged wrongful discharge in breach of the collective bargaining agreement. That case was instituted in the Federal Courts, and involved the interpretation and application of § 301 of the LMRA. It likewise, therefore, in spite of some factual similarity with the case before us, does not "confer jurisdiction" over such cases on the Pennsylvania state courts.

strated to have deprived the courts of such jurisdiction. In other words, if the plaintiff's complaint asserts rights, with corresponding duties and obligations on the defendants, the courts of common pleas have jurisdiction to hear and decide controversies concerning those rights, duties and obligations unless such jurisdiction has been specifically removed by a statute or rule of law. SEPTA, of course, claims that such a rule of law and such a statute exist.

## IV.

## A.

■■■ First, SEPTA argues that the specific and detailed grievance procedures contained in the collective bargaining agreement between appellants give rise to a rule of law that deprives the trial courts of subject matter jurisdiction in this case. Generally speaking, however, the law of Pennsylvania is well settled that a contractual arbitration or grievance procedure does not oust the courts of the Commonwealth of subject matter jurisdiction in cases involving claimed breaches of the contract. In *Wechsler v. Newman*, 256 Pa.Super. 81, 389 A.2d 611 (1978) the owner of an apartment complex filed a complaint in ejectment and assumpsit against the tenants in the apartments. The tenants filed preliminary objections setting forth that the owner and a council representing the tenants had entered into a "collective bargaining agreement" that provided for binding arbitration of any unresolved disputes or issues between the owner and the tenants involving the contract. The tenants argued that the arbitration provision precluded the trial court from asserting jurisdiction over the owner's lawsuit. This court, in affirming the trial court's order which dismissed the preliminary objections said: "Our appellate courts, in applying [the test of jurisdiction], have consistently and emphatically held that a contractual arbitration clause does not affect the subject matter jurisdiction of the trial court and, therefore, does not provide a proper basis for a preliminary objection." [256 Pa.Super. at 88, 389 A.2d at 614] Likewise, in *Howey v. Colonial Penn Ins. Co.*, 234

Pa.Super. 383, 338 A.2d 627 (1975) it was pointed out that preliminary objections raising a defense based on an arbitration clause in an insurance policy did not raise a jurisdictional issue. Also see *McClimans v. Barrett*, 276 Pa.Super. 557, 419 A.2d 598 (1980).

SEPTA, however, argues that the decision of the Pennsylvania Supreme Court in *Falsetti v. Local Union No. 2026 United Mine Workers*, 400 Pa. 145, 161 A.2d 882 (1960) holds that the courts do not have jurisdiction to consider a complaint such as appellee's where there is a collective bargaining agreement that establishes a contractual grievance and arbitration procedure which limits access to the unions rather than the employee. While at first blush SEPTA's argument in this regard is appealing, there is an important and crucial distinction between the situation in *Falsetti* and that in the case before us. In *Falsetti* the plaintiff/employee filed a complaint in equity against his former employer and *individual named officials of the union* based on the allegation that he had been wrongfully discharged by his employer in violation of the seniority provisions of a collective bargaining agreement between the union and the employer. Falsetti also averred that his discharge was the result of an "unlawful conspiracy" between the *individual* union officers and the employer. Subsequently, he filed an amended complaint in which *the union* (as an entity) was added as a defendant in a second count of the complaint. In the second count he asserted that his union membership had been wrongfully terminated by the union. The employer was not named as a defendant in the second count. Preliminary objections were filed by the defendants, including objections to the trial court's subject matter jurisdiction. The trial court sustained the preliminary objection charging that there was a misjoinder of causes of action and dismissed the complaint. The order was affirmed on appeal. However, in analyzing the case, the court, after holding that the causes of action were improperly joined, went on to hold that the trial court did not have jurisdiction over either one of plaintiff's claims. The lack of jurisdiction over the claim

asserted against the union for improper expulsion, resulted from plaintiff's failure to exhaust the internal remedies provided by the unions' constitution and by-laws. Then turning to the first count of plaintiff's complaint against his employer "and the *individual appellees* for an allegedly wrongful discharge" the court pointed out that the collective bargaining agreement contained no provision that authorized an individual employee or union member to enforce it. The court went on to say that the employee's cause of action was precluded by the contractual grievance and arbitration procedure contained in the collective bargaining agreement since the agreement, by its terms, limited access to those procedures to the *union.* The court then pointed out that an aggrieved "member-employee" had an effective remedy. Under the agreement the union had a responsibility in representing its members to act in good faith, in a reasonable manner, and without fraud. For the breach of those duties, the union would be liable to its members in damages. Significantly, the court then went on to say, beginning at page 896: (400 Pa. at 172);

"Such would have been the proper theory upon which to proceed in the instant case. One of appellant's averments was that the Union representatives have arbitrarily refused to process his grievances in breach of their fiduciary duty. There is but one flaw in this reasoning. The fiduciary duty owed the member-employee is by the *Union*, and not by its individual representatives. Officials of the Union, acting in their authorized capacities, cannot be held individually liable in damages to a member-employee for failure to process the grievance since they are but agents responsible only to the Union itself. It is the Union that is the proper target of appellant's complaint.

"Since neither of appellant's causes are predicated on a breach of fiduciary obligation theory the suit in its present posture cannot be maintained. The suit would be properly brought if directed against the Union for breach of its fiduciary obligations to appellant." [Emphasis in original]

Thus, although the Court held in *Falsetti* that an employee could not maintain a suit against the individual officers of his union, it said that the courts of Pennsylvania do have jurisdiction over suits by employees against their *union* for alleged unfair representation. In the case before us, unlike the situation in *Falsetti*, appellee's complaint *is* against the "Union" and it is averred that the union breached its fiduciary obligation of fair representation to appellee. The Court went on, moreover, to indicate that jurisdiction exists to consider such claims even when the employer is joined as a defendant:

> "Quite apart from the question of federal pre-emption, the *employer may be joined*, under the proper circumstances, as a co-defendant for participating in the Union's breach of its fiduciary obligations." (400 Pa. at 173 n.22, and 161 A.2d at 896 n.22) [Emphasis added]

Thus, not only does the court's opinion in *Falsetti* not support SEPTA's argument, it is, by implication, some authority for the position of appellee in this case that where he has filed suit against his "Union" for breach of its responsibility of fair representation, he may join his employer as a defendant in that suit and the courts of the Commonwealth have jurisdiction to consider and decide such a suit.

In this case, appellee has alleged that his discharge by SEPTA for alleged "improper fare collections" was "unlawful", "improper", and "illegal". He also avers that no criminal proceedings were ever instituted against him as a result of the alleged "improper" collections, and that his claim for unemployment compensation was granted despite the fact that SEPTA contested it through appeals to the Referee and later to the Unemployment Compensation Board of Review. Appellee asserts his innocence of the charges and alleges that when he turned to the grievance and arbitration procedures contained in the collective bargaining agreement for redress of the wrong committed by SEPTA his efforts failed due to the "gross", "arbitrary", and "capricious" breach by the unions of their fiduciary duty of fair representation at the grievance hearings and their

refusal to pursue appellee's grievance to arbitration. We should emphasize that whether these averments, if true,[7] are sufficient to state a cause of action on which appellee may recover against SEPTA is not before us at this time. The sufficiency of the complaint to state a cause of action must be raised by demurrer and, as already pointed out, the trial court's ruling on SEPTA's demurrer is beyond our appellate jurisdiction at this time. We hold *only* that the complaint is sufficient to show that appellee's claims are within a "general class" of controversies over which the courts of the Commonwealth have the power to consider and decide. Under such circumstances the contractual grievance and arbitration provisions of the collective bargaining agreement do not prevent the trial court from exercising subject matter jurisdiction over appellee's complaint.

### B.

Finally, SEPTA argues that the courts of common pleas have been deprived by the General Assembly of Pennsylvania of jurisdiction to consider complaints such as appellee's by the enactment of the PERA. The argument is that the legislature vested exclusive jurisdiction in the PLRB to consider and act upon charges of unfair practices and conduct between employees, employers and unions subject to the provisions of the Act.

A similar argument was presented to the Pennsylvania Supreme Court in *West Homestead Boro School Dist. v. Allegheny Co. Bd. of School Directors*, 440 Pa. 113, 269 A.2d 904 (1970) where the defendant argued that the 1968 Supplemental Reorganization Act to the Public School Code of 1949 provided an exclusive, statutory, administrative remedy which had not been utilized by the plaintiff. In considering that argument the court said, 440 Pa. at 118, 269 A.2d at 907:

7. We are required, in passing upon appellant's preliminary objections, to accept as true appellee's averments of fact contained in his complaint. Upon remand and trial they will be subject, of course, to proof if denied by appellants.

For more than 150 years, it has been the rule in Pennsylvania that: 'In all cases where a remedy is provided, or duty enjoined, or anything directed to be done by any act or acts of assembly of this commonwealth, the directions of the said acts shall be strictly pursued, and no penalty shall be inflicted, or anything done agreeably to the provisions of the common law, in such cases, further than shall be necessary for carrying such act or acts into effect.' Act of 1806, March 21, P.L. 58, 4 SM.L. 326 § 13; 46 P.S. § 156. See *Calabrese v. Collier Twp. Munc. Auth.*, 430 Pa. 289, 294–95, 240 A.2d 544, 547 (1968).

"This statute says in unambigious language that, if the legislature provides a specific, *exclusive*, constitutionally adequate method for the disposition of a particular kind of dispute, no action may be brought in any 'side' of the Common Pleas to adjudicate the dispute by any kind of 'common law' form of action other than the exclusive statutory method. This excludes an action for injunction, or other equitable form of relief, unless the statute provides for it or unless there is some irreparable harm that will follow if the statutory procedure is followed.

"It is equally clear, that if the legislative method for disposing of the dispute is *not exclusive*, some appropriate form of 'common law' action in the Court of Common Pleas may be available, and the Common Pleas may have 'jurisdiction' . . .

"Accordingly, our task in this case is simply to examine the underlying statute which governs this controversy and to determine its effect under the provisions of the Act of 1806 and the opinion in *Calabrese*, supra." (emphasis in original)

The court went on in that case to hold, after analyzing the Supplemental Reorganization Act, that the administrative procedure provided therein constituted "a comprehensive and constitutionally adequate procedure available to a school district which considers itself aggrieved by the actions of the County and State Boards." The Supreme Court held that the trial court lacked subject matter jurisdiction at the early

stage of the administrative proceedings involved in that case and, therefore, lacked authority to consider the plaintiff school board's complaint.[8]

■ Although the Act of 1806, referred to by the Supreme Court in *West Homestead Boro School Dist. v. Allegheny Co. Bd. of School Directors*, supra has been repealed, it has been replaced and essentially reenacted by the Act of December 6, 1972, P.L. 1339, No. 290, § 3, 1 Pa.C.S.A. § 1504. Therefore, our task is to examine the underlying statute, in this case the PERA, to determine whether or not it provides a specific exclusive constitutionally adequate method for the disposition of appellee's claim.

It is true that § 1301 of the PERA vests exclusive jurisdiction in the PLRB "to prevent any person from engaging in any unfair practice listed in Article XII of" the act. However, an examination of the unfair practices listed in § 1201 of the PERA shows that neither SEPTA's conduct or the actions of the unions about which appellee complains in this complaint are included. A list of the unfair practices of public employers over which exclusive jurisdiction has been vested in the Board does not include a discharge which the employer claims was for the improper or illegal performance by the employee of the duties of employment. The only form of employee discharge over which the Board has been granted exclusive jurisdiction is a discharge based upon the

---

**8.** Also see *Brookhaven Borough v. American Rendering, Inc.*, 434 Pa. 290, 256 A.2d 626 (1969) [an amendment to the Air Pollution Control Act of 1960 extended the remedies available thereunder permitting equity jurisdiction to attach in all cases of alleged public or private nuisances resulting from air pollution], and *Gardner v. Allegheny Co.*, 382 Pa. 88, 114 A.2d 491 (1955) [held that (1) the Civil Aeronautics Act of 1938 did not deprive the state courts of subject matter jurisdiction to consider a complaint in equity seeking an injunction to enjoin the flight of commercial airliners over plaintiffs' properties *"below the floor of the navigable airspace* in landing at or taking off from Greater Pittsburgh Airport," but (2) that the provisions of the Second Class County Code dealing with the condemnation of properties and the assessment of damages therefore deprived the courts of common pleas, at least initially, from assessing damages for an alleged taking of the plaintiff's property by virtue of repeated flights over the plaintiff's property which it was alleged completely destroyed the value of the properties, thereby constituting a "taking"].

employee's action in signing or filing "an affidavit, petition or complaint" or giving "any information or testimony under" the PERA. Appellee does not even allege or argue now that his discharge by SEPTA was for any of these reasons. Additionally, the alleged breach by the unions of their duty of fair representation during the grievance procedure is not among the unfair practices of employee organization over which the Board has been granted exclusive jurisdiction. Since an examination of the provisions of PERA shows that the legislature did not provide an exclusive, specific or adequate method for the disposition of appellee's claim in this case, it follows that the courts of common pleas have not been deprived of subject matter jurisdiction by the enactment of the PERA by the legislature.

The same result was reached by a panel of the Commonwealth Court in *Rutledge v. Southeastern Pa. Tran. Auth.*, 52 Commonwealth Ct. 308, 415 A.2d 982 (1980), a case involving the same employer, the same unions and the discharge of an employee for similar, although not identical reasons.[9]

## CONCLUSION

Having concluded that this court has appellate jurisdiction to consider only the issue of subject matter jurisdiction raised by appellants and that the trial court in this case has jurisdiction to entertain, consider and decide appellee's complaint, and for the reasons expressed herein, the appeal of the unions at No. 2457 Oct. Term, 1978 is dismissed. In the appeal by SEPTA at No. 2459 Oct. Term, 1978 the order of the trial court overruling SEPTA's preliminary objections to the jurisdiction of the trial court, pursuant to Pa.R.C.P. 1017(b)(1) and 1509(b) is affirmed. In all other respects the appeal at No. 2459 Oct. Term 1978 is quashed. The case is remanded to the trial court for further proceedings. Jurisdiction is relinquished.

**9.** The facts underlying the complaint in *Rutledge* were basically the same as those in the present case. The Commonwealth Court concluded that the act complained of was not an unfair labor practice under the PERA.