## Stephano and Quick v. Twp. of St. Thomas

[redacted]

*Michael J. Clement and Denis M. DiLoreto,* for Franklin Properties.

*Terry R. Bossert and David C. Cleaver,* for St. Thomas Concerned Citizens.

*Jens Damgaard and Edward I. Steckel,* for Township and Municipal Authority.

EPPINGER, *P.J.,* September 5, 1985—In these cases which have been consolidated and were brought to restrain the Township of Saint Thomas (township) and the Saint Thomas Township Municipal Authority (authority) from constructing a sewer system, there are really only four interests. Plaintiff in the one case is Franklin Properties, a

partnership owning mobile parks in the township. Plaintiffs in the other case are a group of people called St. Thomas Concerned Citizens and individual members of the group (concerned citizens). Defendants in both cases are the township and the authority. The supervisors and the members of the authority have been joined in their individual capacities.

The project was set to go ahead after three ordinances were passed by the township, the first approving an agreement between the township and the authority under which the authority was to build and operate the sewer system. The second ordinance required certain owners to connect to and use the system, and the third granted the authority certain rights and privileges along township roads.

When Franklin Properties and concerned citizens filed their complaints, the township and the authority filed preliminary objections consisting of motions to strike and demurrers. These are now before us.

The principles to be applied when ruling upon a demurrer are well established. A demurrer can only be sustained where the complaint is clearly insufficient to establish the pleader's right to relief. Firing v. Kephart, 466 Pa. 560, 563-64, 353 A.2d 833, 835 (1976). For the purpose of testing the legal sufficiency of a complaint, a demurrer admits as true all well-pleaded, material, relevant facts, Savitz v. Weinstein, 395 Pa. 173, 174, 149 A.2d 110, 111 (1959); March v. Banus, 395 Pa. 629, 632, 151 A.2d 612, 614 (1959), and every inference fairly deducible from those facts, Hoffman v. Misericordia Hospital of Philadelphia, 439 Pa. 501, 504, 267 A.2d 867, 868 (1970); Stein v. Richardson, 302 Pa. Super. 124, 136, 448 A.2d 558, 564 (1982). The pleader's conclusions or averments of law are not consid-

ered to be admitted as true by a demurrer. Savitz, supra at 174, 111.

It must appear with certainty that upon the facts alleged in the complaints the law will not allow plaintiffs to recover. Pike County Hotels Corp. v. Kiefer, 262 Pa. Super. 126, 133, 396 A.2d 677, 681 (1978). If the facts as pleaded state a claim for which relief may be granted, a preliminary objection in the nature of a demurrer must be rejected. County of Allegheny v. Commonwealth, 507 Pa. 360, 490 A.2d 402, 408 (1985).

Both plaintiffs contend the construction of this sewer is limited by the provisions of the Second Class Township Code, governing construction of sewers and drains, 53 Pa.C.S. §65101 et seq. Both defendants contend that the sewer is being constructed under the provisions of the Municipality Authority Act of 1945, 53 Pa.C.S. §301 et seq.

Franklin Properties' parks are now served by sewer systems installed under permits from the Pennsylvania Department of Environmental Resources. It is their argument that 53 Pa.C.S §66501(d) prohibits the township from requiring them to connect to another system. Since 53 Pa.C.S. §66502 permits 60 percent of the total property owners to veto a sewer construction plan if they file a protest in the prothonotary's office, and concerned citizens allege they have done this, it is their contention the project may not proceed.

Concerned citizens also argue that the provisions of 53 Pa.C.S. §66502 requiring advertisement of the sewer ordinances once a week for three weeks [have] not been complied with. There was only one advertisement.

This is plainly a case where a municipal authority is constructing a sewer, and it would seem the Municipality Authorities Act should apply. Franklin

Properties and the concerned citizens claim that the township's "intensive involvement" in the program makes it a township project. But 53 Pa.C.S. §66501.1 authorizes the township to participate in many ways when a sewer system is being built by a municipal authority. We will discuss the issues raised by Franklin Properties and the concerned citizens, but we conclude that this proposed installation is governed by the Municipality Authorities Act and not the Second Class Township Code.

As the Second Class Township Code, 53 Pa.C.S. §66501.1, clearly indicates, the Municipality Authorities Act applies when the sewer is established or constructed by a muncipal authority within a township of the second class. Plaintiffs admit these requirements have been satisfied. "Where the words of a statute are clear, the letter is not to be disregarded in search of legislative intent." Ralpho Township v. Bebenek, 2 D.&C.3d 74, 79 (1976).

It is interesting to review the legislative purpose of the Municipality Authorities Act. The legislative comment to the act, 53 Pa.C.S. §306, states that the General Assembly recognizes municipal economic growth is vital but, at the time of the act, was impaired by annexation laws, local tax limits and the inability to tax certain property which is exempt. Having found these restrictions to be detrimental, the General Assembly then found it to be the policy of the Commonwealth to promote health, safety, morals, right to gainful employment, business opportunities and the general welfare of the inhabitants of municipalities. The Municipality Authorities Act was adopted to effect this stated policy.

By this language it is clear that clean, pure water for drinking and industrial purposes is necessary. This policy can be practically and effectively carried out in some municipalities only by the creation of a

quasipublic governmental body such as an authority. At argument both sides conceded that given constitutional and statutory limitations, many municipalities would be unable to provide the services needed by the people absent the Municipality Authorities Act.

There is nothing unconstitutional or unusual about an authority having more powers and advantages than a township. It was the purpose of the Municipality Authorities Act to provide such advantages. See Simon Appeal, 408 Pa. 464, 469, 184 A.2d 695, 698 (1962).

As we said, we will discuss the alleged "intensive involvement" of the township which plaintiffs say makes this a township and not an authority project. First, concerned citizens allege the township has incurred a debt by guaranteeing an authority note of over $500,000 and will be required to make interest payments. However, we perceive that guaranteeing a debt of the authority does not incur a debt until default occurs. That has not been alleged.

If we accept as true, as we must, the allegation that the township has had to make interest payments on the note, this is not such "intensive involvement" as to bring the Second Class Township Code into play. The Municipality Authorities Act, 53 Pa.C.S. §306B(k), authorizes authorities "to borrow money and accept grants from and to enter into contracts . . . or other transactions with any . . . municipality." In Laux v. Borough of Harvey's Lake, 2 Pa. Commw. 297, 300, 276 A.2d 366, 368 (1971), it was said: "If the authority may accept grants the municipality may make them." Under this doctrine an outright grant by the township to the authority would be appropriate. Surely guaranteeing an authority debt or paying interest, if required, would be within the purview of the Laux decision.

Both plaintiffs allege the pledge of the full faith and credit and taxing power of the township will be required to sell the bonds. This may be so, but under 53 Pa.C.S. §66504, the township has broad authority in the disposition of sewage within its limits and to do so, may contract with other municipalities or corporations. An agreement to pledge the township's full faith and credit and taxing power and an agreement to guarantee the authority's note is proper under §66504. "The statute expressly recognizes and permits such an agreement . . . This does not make the construction project a township operation." In re Tredyffrin Township Ordinances, 9 Chester 323, 329 (1960).

In the complaints there are no factual allegations supporting the contention that the pledge of the full faith and credit and the taxing power of the township will be necessary to sell the bonds.

Concerned citizens further contend that, should the township be required to pledge its full faith and credit and taxing power, this is somehow an unconstitutional delegation of that power to the authority. At most this argument suggests that if the township has to do this, it will be stuck with raising the money to pay off the bonds. That in no way delegates to the authority "the unlimited power to levy taxes." See Evans v. West Norriton Township Municipal Authority, 370 Pa. 150, 159, 87 A.2d 474, 479 (1952).

Both plaintiffs argue that an authority must *independently* establish and construct a sewer system for the Municipality Authorities Act to apply. (Emphasis added.) Neither the Township Code nor the Authorities Act mentions the word "independently" and, as previously noted, in the erection of a sewer system townships and authorities are expressly authorized to cooperate and contract with each other.

Here the township is not constructing a sewer system but is approving its construction and operation by a municipal authority, Shank v. Knaub, 10 D.&C.3d 664, 666 (1979); Fischer v. Reed, 55 Del. 233, 235-36 (1967), aff'd per curiam, 431 Pa. 649, 246 A.2d 123 (1968), as required by 53 Pa.C.S. §306B(s).

Concerned citizens raise a question under the equal protection clause of the United States Constitution. U.S.C.A. Const. Amend. 14. Their claim is that under Pennsylvania law, where some sewers may be built by townships and the people have a veto, and others may be built by authorities and the people do not have a veto, denies the authority-built residents equal protection [sic]. We find no constitutional violations.

The test to be applied to an equal-protection challenge is that "a classification must be reasonable," not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." In re Estate of Cavill, 459 Pa. 411, 413, 329 A.2d 503, 505 (1974). States are permitted to treat different classes of persons in different ways provided the above-mentioned test is met, McDonald v. Board of Election Commissioners, 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969), and "wide discretion is allowed to the state's legislature to establish reasonable classifications in promoting the safety and welfare of those within its jurisdiction." U.S. v. York, 281 F.Supp. 8, 13 (U.S.D.C. of Conn. 1968). "Remedial legislation which preserves or promotes the health of all of the people of this Commonwealth should certainly be given the benefit of any reasonable doubt as to its constitutionality." Evans, supra, at 152, 475. Under Pennsylvania law, we are re-

quired to construe statutes to avoid a violation of the United States Constitution or Pennsylvania Constitution. 1 Pa.C.S. §1922(3).

Two systems for building sewers, one by the township and another by an authority, having different initial effects on the people who live within an affected district, is not an unreasonable classification where the health and safety of all of the people are concerned. Though a sewer for the Township of Saint Thomas is under construction, the residents of the township are not the only people with a stake in the project. Pollution has a way of creeping and artificial boundaries like township lines will not hinder it. Proper sewers are a way of controlling pollution for the benefit of all of the people of the state. Moreover, township officials, required to meet a sewage problem, who face the veto of the people, could, as a second effort, resort to an authority system so all are subject to the same treatment.

We are not required to consider concerned citizens' contention that this project was not properly advertised under the township code since we find it is proceeding under the Municipality Authorities Act. Nor for the same reason need we discuss further the fact that written protests were filed by township property owners.

In paragraphs 10 and 12 of its amended complaint, Franklin Properties alleges that the supervisors and authority members are acting individually and in concert in a conspiracy to waste taxpayers' money. These mere assertions, without more, are just labels or conclusions and are not admitted as true by the filing of a demurrer. Savitz, supra, at 174, 111. "Expressions of opinion, argumentative allegations or inferences unwarranted by the admitted facts are not deemed admitted by the pre-

liminary objections." Miller v. County Commissioners of Potter County, 74 D.&C.2d, 371, 376 (1976).

A similar allegation in paragraph 22 that the supervisors and authority members are acting in concert to make false, misleading and improper projections to justify the construction of the sewer is not admitted by the demurrer as it is no more than bare, unsupported allegations of misconduct. Miller, supra. This language smacks of fraud or intentional misconduct but "[t]here is nothing pleaded that amounts to fraud, collusion or bad faith." Steele v. Borough of Millersville and the Millersville Municipal Authority, 65 Lanc. L.R. 321, 323 (1976).

Both plaintiffs contend that the vast majority of the residents of the township object to the proposed sewer project. This has no relevance to any of the issues before us. We cannot intervene and stop the actions of the township and the authority, "upon the assertion and proof, assuming the proof would be forthcoming, that a majority of the electorate disapprove of the proposed action of the governing body of that unit of government. Such a proposition is obviously in fundamental conflict with the constitutional doctrine of the separation of powers." Noble v. Sto-Rox School District, 55 D.&C.2d 611, 613 (1971). If the majority of the township residents believe that the supervisors have made a mistake in judgment then, "they are answerable to the constituency that elects them," Downing v. Erie City School District, 360 Pa. 29, 34, 61 A.2d 133, 136 (1948), and not to this court.

Plaintiffs make allegations about sewer rates to be charged and connection fees necessary to finance the project, all of which, according to alleged experience in nearby Antrim Township, will stifle growth, that the bonds will be unmarketable, thus rendering the township and its residents liable for

payment creating an unnecessary and wasteful burden on the taxpayers.

The Municipality Authorities Act, 53 Pa.C.S. §306B(h), places the exclusive right to fix and charge rates with the authority. It grants to any person questioning the reasonableness or uniformity of the rates, the right to sue the authority in the court of common pleas of the county wherein the project is located. In this case no rates have been fixed. These complaints are therefore premature. If they were appropriate, this case is not an appropriate vehicle. This is a case in equity and such a complaint must be brought on the law side of the court. Calabrese v. Collier Township Municipal Authority, 430 Pa. 289, 296, 240 A.2d 544, 548 (1968); South Union Township Sewage Authority v. Kozares, 13 Pa. Commw. 325, 330, 320 A.2d 381, 384 (1974). The allegations about charges are prospective at best, not actual, and plaintiffs' objections are premature. Steele, supra at 324.

The reference to Antrim Township experience is particularly speculative and is far too hypothetical to constitute a factual averment which must be accepted as true. "Speculative hypotheticals which allude to motive and the possible consequences of decisions based thereon do not justify judicial review of the discretionary acts of municipal authorities." Larrecq v. Van Orden, 21 Pa. Commw. 623, 627, 346 A.2d 922, 925 (1975).

The remaining averments of each plaintiff, constituting the bulk of their complaints, are contentions that the township and the authority abused their discretion in not considering that Franklin Properties' tenants are capable of moving at any time, thus decreasing the township base; in refusing to use the existing sewer treatment facilities in Franklin Properties' mobile home parks; in making

and relying upon false and inaccurate growth projections in the township; in making and relying upon erroneous, misleading, and unsound cost and revenue projections; in allocating approximately 37 percent of the total construction cost for engineering, legal and fiscal expenses; in proposing a project which is not economically designed or feasible and which is more extensive and costly than required to fill township needs and would necessitate a heavy sewer rental and tax; in failing to consider all the facts; in proposing a project which will cause township property owners to suffer unreasonable and unnecessary economic hardship; in failing to adequately and independently evaluate the feasibility of the project; and in underestimating the cost of operating the sewer system and the costs of the debt service necessary to carry the proposed bonds.

There are many cases where actions of municipal officials have been challenged for an abuse of discretion and the principles we must apply in this determination are well established. "Courts will not review the actions of governmental bodies or administrative tribunals involving acts of discretion, in the absence of bad faith, fraud, capricious action or abuse of power; they will not inquire into the wisdom of such actions or into the details of the manner adopted to carry them into execution." Blumenschein v. Pittsburgh Housing Authority, 379 Pa. 566, 572, 109 A.2d 331, 335 (1954). Our scope of review is limited to the determination, "of whether there has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of . . . duties or functions." Blumenschein, supra, at 572, 335.

In passing upon the propriety of the actions of the supervisors and the authority members, "judicial restraint rather than judicial intervention should

guide" us, Weber v. Philadelphia, 437 Pa. 179, 189, 262 A.2d 297, 302 (1970). We should be "loathe to review the details of the effectuation of actions of municipal authorities." Flaherty v. Allegheny Port Authority, 450 Pa. 509, 516, 299 A.2d 613, 617-18 (1973).

We are not to act as a super-municipal body. Weber, supra, at 189, 302. That we might have a different opinion or judgment in regard to the actions of the supervisors and the authority members is not a sufficient ground for interference — judicial discretion may not be substituted for administrative discretion. Blumenschein, supra, at 572, 335; Flaherty, supra, at 516, 618.

In considering whether the supervisors or authority members are guilty of a manifest and flagrant abuse of discretion, we start with the presumption that the supervisors and authority members, "acted sincerely, in good faith and for the best interests of the residents of the municipalities involved." Steele, supra, at 325. "These officials must be regarded as acting properly and for the public good." Hyam v. Upper Montgomery Joint Authority, 399 Pa. 446, 457, 160 A.2d 539, 545, cert. denied, 364 U.S. 288 (1960).

Plaintiff's allegations that the supervisors and authority members abused their discretion all fall under one of three topics — (1) the need for sewer facilities in the township; (2) the cost of the sewer project; and (3) the method of financing the project. We will discuss these topics in order.

The first topic is the need for sewer facilities. Franklin Properties makes several allegations which refer explicitly, or impliedly, to the need for the type of sewer facilities proposed. It alleged that it advised defendants that they could use its existing sewer treatment facilities and they have neglected

to do so; that the proposed facilities are more extensive than required to fulfill the needs of the township; and that the supervisors have failed to consider all the facts in regard to the needs of the township.

Whether there is need for a sewer "involves many considerations; it is largely a question of practical judgment, common sense and sound discretion." Blumenschein, supra, at 572, 334. "The municipality is the sole judge of the necessity of sewers and its judgment is conclusive." Steele, supra, at 324. In the exercise of this judgment, municipal officials have broad discretion. Erthal v. Wynne, 35 D.&C.2d 65, 76 (1963).

No facts alleging abuse of discretion in determining that there is a need for this system have been alleged. Township officials have been considering it for years; there have been numerous meetings and discussions contemporaneous with attempts to obtain federal and state grants. Presumably the calculations in Exhibit B of Franklin Properties' amended complaint resulted from reports, proposals, plans and specifications prepared by engineers and consultants. See Steele, supra, at 326. We are not required to refuse to recognize all of the planning and effort that has gone into this project. The sincerity and good faith of those involved cannot be seriously questioned. Steele, supra, at 326.

What Franklin Properties really wants is its two mobile home parks exempted. Later we will discuss the limits of its authority to continue to operate its sewer treatment plants. It is now sufficient to say that the alleged intended action to require the mobile home parks to be hooked up to the treatment system is appropriate. Erthal, supra, at 77.

The second topic is costs. It is alleged the system is not economically designed; that defendants relied

on erroneous, misleading and unsound cost projections; that engineering, legal and fiscal fees are too high; that the project costs are underestimated; and that some cost factors were not even considered.

The authority has discretion to determine the nature, extent, capacity and cost of the system. Armstrong v. Hughesville Borough, 24 D.&C.2d 401, 404 (1960). Plaintiffs allege no facts to support their proposition that the project is too costly. Labeling it as economically unfeasible, too expensive, etc., does not make it so. Hyam, supra, at 457, 545. No allegations were made of fraud, misconduct, improper motivation or lack of responsibility in either complaint so the judgment of the authority should not be disturbed. Flaherty, supra, at 520, 620.

In Flaherty, supra, at 520, 620, where it was alleged the authority failed to accept less expensive plans, the court dismissed the contention by saying that the determination of such considerations was placed in the first instance in the authority. In Larrecq, supra, where it was said cost-feasibility studies were not made, the building was over-designed [and] bids exceeded average cost of similar construction, the court dismissed these contentions and defendant's demurrer, noting reasonable men might differ in projects such as this and it was not up to the court to make an independent choice of alternatives in such situations. Larrecq, supra, at 628, 925.

The principal cost allegations in Hyam, supra, were that the proposed sewer project was not economically feasible and the authority refused to consider other alternatives. The court dismissed these contentions and sustained defendant's demurrer saying:

"A hearing might indicate that the proposed plan is not as complete as it might be, that it involves a

greater expenditure of money than the results would justify or that it was unwise at this time to enter upon such a plan. However, the determination of such facts has been placed in the first instance in the discretion and judgment of the authority and borough officials and upon them has been placed responsibility under the law for such determination and judgment." Hyam, supra, at 457, 545.

It is also alleged the authority is relying on 1982 or outdated cost figures. In Flaherty, supra, at 520, 619-20; we were instructed that there is no legal authority in the court to order the updating of cost figures absent fraud or abuse of power.

Judicial intervention is not justified even if less expensive engineering, legal fees and fiscal expenses, could be obtained as is seemingly contended by plaintiffs. Comerford v. Factoryville Borough, 75 D.&C.2d 542 (1976).

Financing the proposed project is the third topic. Plaintiffs allege defendants have abused their discretion by projecting a large portion of the projected revenue as coming from residents of mobile homes — residences on wheels that can obviously be moved out of the township. Plaintiffs also allege defendants have made false misleading and inaccurate estimates of revenue; have failed to consider all the financial facts; are proposing a project which will result in a heavy and debilitating sewer rental and high taxes with the resultant economic burden; and have overestimated revenue and underestimated costs.

How this project is to be completed is in the discretion of the authority and undoubtedly there are different ways of doing it. Allegations of an "unreasonable and unnecessary economic burden," "debilitating tax," making "misleading and inaccurate estimates," are insufficient to invoke judicial re-

view. Larrecq, supra, at 628, 925. Labeling authority actions as such does not make them so. Hyam, supra, at 457, 545.

The contention that the authority did not consider possible mobile home pull-out is the equivalent of stating that what the authority did was wrong. Assuming it was wrong, judicial intervention is not warranted. "Whether plaintiff or the court agree with the action of the defendants is irrelevant." Miller, supra, at 379.

Similar contentions regarding financing were made in Larrecq, supra, and Hyam, supra, and in each case the court declined to intervene.

A lower growth rate than expected and the existence of mobile homes are not sufficient factual averments to constitute a manifest and flagrant abuse of discretion. Turley v. North Huntingdon Township Municipal Authority, 5 Pa. Commw. 116, 122, 289 A.2d 509, 512-13 (1972).

Plaintiffs cite Walker et al. v. Harbor Creek Township Municipal Authority, 47 Erie L.J. 6 (1963), in support of their contention that they are entitled to a trial in this matter. In that equity action, the court held that the Municipality Authorities Act, 53 Pa.C.S. §306(h), required it to consider the reasonableness and uniformity of the rates fixed by the authority and the adequacy, safety and reasonableness of the service, and even though no rates had been fixed, without citation of authority, moved the case onward towards trial. We believe the court misread §306(h). We have already pointed out that cases under this section are not properly brought in equity. See Calabrese, supra, and South Union Township Sewer Authority, supra. We believe rates cannot be challenged until they are set. See Steele, supra.

As noted earlier, Franklin Properties contends that since its mobile home parks are served by treat-

ment systems under a permit issued by the Department of Environmental Resources (DER), the residents of the park should not be required to connect to the proposed system. We have held that the Second Class Township Code does not apply, so reliance on 53 Pa.C.S. §66501(d) is misplaced. There is language in the Municipality Authorities Act, 53 Pa.C.S. §306A(b)(2), saying the act shall not be used in the construction of any project which in whole or part duplicates or competes with existing enterprises serving substantially the same purposes.

When we closely examined the DER permits issued to Franklin Properties and its predecessors in title, we conclude they resolve this issue. The only permit attached to the complaint did not contain a condition that the owner of the parks must abandon its sewage treatment facilities when a municipal system becomes available. Attaching only this permit is misleading. Several others were issued. As they are all matters of public record filed in the Franklin County Recorder of Deeds Office, and as the complaint alleges them to be matters of public record, we can properly consider them.

The original permit for sewage treatment facilities at Rolling Acres Mobile Home Park (Rolling Acres) was issued October 4, 1967, to the original owners, Harold and Joan Rife (the Rifes). This permit was not subject to a condition that the park must abandon its sewage facilities when municipal facilities became available because DER had no such condition at the time.

Subsequently, the Rifes bought another mobile home park, Hillside Manor (Hillside), and on December 6, 1973, DER issued another permit to the Rifes for the operation of the sewage treatment facilities in that park. This permit was clearly made

subject to Condition 26, which stated that when municipal sewage facilities became available then the permittees (the Rifes) must abandon their current facilities and this permit would become null and void.

In 1974, the Rifes added to the sewage treatment plant for Rolling Acres and applied to DER for a permit to·operate it. This permit was issued April 3, 1974, and was subject to Condition 26 just discussed.

In 1978, Rolling Acres and Hillside were sold to Jack B. Crist. On August 31, 1978, DER issued transfer permits for the sewage treatment facilities. Condition 26 was listed on the transfer permits for Hillside and for the addition to the Rolling Acres treatment plant. Condition 26 was not noted on the transfer permit for the main treatment plant of Rolling Acres because it is not DER's policy to update permits with new conditions and because Condition 26 was noted on the permit for the addition to the plant.

In 1984, Rolling Acres and Hillside were sold to [their] present owners, Franklin Properties. On August 21, 1985, DER issued the transfer permits for Rolling Acres' plant, the plant addition, and for Hillside. The condition which was previously numbered as 26 had now become 15, but the substantive content of the condition remained the same. It still required Franklin Properties to abandon its present sewage treatment plant when municipal sewage facilities became available. This condition is plainly noted on the transfer permits for Hillside and the addition to the Rolling Acres plant. Again, the condition was not noted on the transfer permit of the main Rolling Acres plant because of DER's policy and because it is noted plainly on the transfer permit for the addition to Rolling Acres' plant. Addition-

ally, the cover letter attached to the transfer permit for Rolling Acres' main plant makes clear that this facility is subject to the same Condition 15 noted on the transfer permit for the addition to Rolling Acres' plant.

That DER has jurisdiction over this matter is made clear by 35 Pa.C.S. §691.5(b)(5), which states that DER has the power and duty to "[r]eview and take appropriate action on all permit applications submitted pursuant to the provisions of this act and to issue, modify, suspend, limit, renew or revoke permits pursuant to this act and to the rules and regulations of the department." Franklin Properties applied for the transfer permits issued on August 21, 1985, and is admittedly subject to the above cited provision and DER jurisdiction.

Franklin Properties admits that the permits and conditions thereto apply to it as a successor in interest to the previous permittees, that it made a diligent search of these records, and relied upon them in its purchase of Rolling Acres. In light of its diligent search we are sure that Franklin Properties was aware of the above-described permits and especially aware of the conditions thereto. Franklin Properties is subject to DER jurisdiction and must follow the plain language of Condition 26, now Condition 15, and abandon its present facilities when the proposed sewer project of the authority is complete and its facilities available for connection.

In conclusion, neither complaint avers factually that the conduct of defendants satisfied the conditions precedent for judicial intervention in their administrative discretion and the complaints, therefore, fail to state a cause of action. Considering the facts as averred in this action, we do not see any way that either plaintiff can draft a complaint so as to

state a cause of action. Therefore, we sustain defendant's demurrers with prejudice.

There are remaining motions to strike. However, since we have sustained the demurrer it is not important that we deal with them. We will correct the caption to properly name the partnership plaintiffs to read Constantine Stephano and Robert Quick trading as Franklin Properties.

As an end note, we will add that in our view the individual supervisors and members of the authority are not properly joined as defendants.

Pa.R.C.P. 2102(b) provides that an action shall be brought against a political subdivision in its name. Plaintiffs, however, cited Patera et al. v. Charleroi School District, 22 Pa. Commw. 451, 349 A.2d 529 (1975), as requiring the joinder of the individual supervisors and members. In that case the court was called upon to construe the Open Meeting (Sunshine) Law, 65 Pa.C.S. §261 et seq. In so doing, the court found that the individual members of the school board in question were necessary parties. Considering the nature of that act, the purpose of which is to require the individual members to meet together in public, we understand why they must each be made a party. Under the Sunshine Law, merely enjoining the municipal subdivision might not prevent the individual members from getting together in private. To prevent such violation, they should be individually enjoined.

It is unexplained to us by plaintiffs, how, if the court restrained the township and the authority from going ahead with the project, the individual supervisors or authority members could accomplish it. No individual or personal liability of the supervisors or members is alleged. In Warrington Sewer Co. v. Achenbach et al., 25 Bucks Co. L. Rep. 176, 177 (1974), and in Zambelli v. Neshaminy School

District, 4 D.&C.3d 577, 578 (1978), the individuals were dropped from the suits. The idea that suits should be brought against the political subdivision by name was decided early in the case of Wilson v. The Commissioners of Huntingdon County, 7 W.&S. 197 (1844).

We would grant the motion to strike the individual supervisors and members of the authority.

## ORDER OF COURT

September 5, 1985, the demurrers are sustained, the individual supervisors and members of the municipal authority are dropped as defendants and the caption is corrected to show that plaintiff is Constantine Stephano and Robert Quick, trading as Franklin Properties. Plaintiff is not granted the right to plead over. The other preliminary objections are moot.